# CHARLESTON.

WOODFORD *et als. v.* RAILROAD CO.

Submitted March 1, 1910. Decided December 19, 1911.

1. CARRIERS—*Carriage of Live Stock—Time for Delivery to Consignee.*

    In the absence of special agreement by a railroad company to deliver cattle at the place of destination in a specified time, there is an implied obligation to deliver them within a reasonable time. (p. 197).

2. SAME—*Carriage of Live Stock—Time for Delivery—Question for Jury*.

What is a reasonable time for transportation, is a question for the jury, depending upon the facts and circumstances of each particular case, and upon the nature of the freight to be carried. (p. 197).

3. SAME—*Carriage of Live Stock—Actions Against Carrier—Burden of Proof*.

Proof of failure to deliver cattle at place of destination within the usual or schedule time, establishes a *prima facie* case of negligence, and makes it incumbent upon the railroad company to justify the delay. (p. 198).

4. SAME—*Carriage of Live Stock—Time for Delivery—Liability for Delay*.

Without special agreement to deliver in a specified time, a common carrier is not liable for delay in the delivery of freight, due entirely to unavoidable accident. (p. 198).

5. SAME—*Carriage of Live Stock—Limitation of Liability—Validity*.

A common carrier cannot lawfully contract against its common law liability for negligence of its employes. (p. 199).

6. SAME—*Carriage of Live Stock—Delay in Delivery—Measure of Damages*.

The difference in the market value of cattle at the time when they were actually delivered and at the time when they should have been delivered, is an element of damages in an action against the carrier for unreasonable delay in making delivery. (p. 199).

Error to Circuit Court, Burbour County.

Action by John L. Woodford and another, partners, against the Baltimore & Ohio Railroad Company. Judgment for plaintiffs, and defendant brings error.

*Reversed and Remanded.*

*Blue & Dayton,* for plaintiff in error.

*Wm. T. George* and *John B. Dilworth,* for defendants in error.

WILLIAMS, PRESIDENT:

John F. Woodford and J. C. Watson recovered a judgment against the Baltimore & Ohio Railroad Company for the sum of

$138.18, damages for the alleged failure to deliver two car loads of cattle, within reasonable time, which were shipped from the town of Philippi in West Virginia to Philadelphia, and the defendant has brought the case here on writ of error.

The cattle were loaded on defendant's cars at Philippi about noon, Thursday, September 3, 1908, and did not arrive in Philadelphia until about six o'clock P. M. on the following Saturday, too late for that day's market. Plaintiffs had shipped cattle over the defendant's road from Philippi to Philadelphia for about fifteen years, and they testify that thirty-six hours is the usual time for transportation. On this occasion, however, the northbound train, which usually passed Philippi about one or two o'clock P. M., daily, and which was the train that should have picked up the cattle cars and carried them as far as Grafton, West Virginia, had an accident before reaching Philippi, which delayed it four or five hours, and it failed to make connection with the eastbound fast freight known as No. 98, scheduled to pass Grafton about 7:30 P. M. No. 98 left Grafton that day at 8:15 P. M. The cattle were then held over in Grafton to wait the arrival of another freight train from the west, designated as No. 82, which carried fast freight as far as Grafton, for points farther east. But on the arrival of No. 82, it was ascertained that it had no freight to be carried any farther east, and a train was then made up which included the two cars of cattle. That train left Grafton for Cumberland, Maryland, at 4:45 the next morning. Cumberland is about one hundred and two miles east of Grafton, and the train arrived there at 1:45 P. M. of the same day. The cattle were then unloaded, fed and watered, and reloaded and put into a train of cars which left Cumberland for Philadelphia at 7:40 P. M.

A tire came off one of the blind drivers of the engine some distance south of Philippi, which delayed the train from Philippi to Grafton, and caused it to miss connections, at the latter place, with the fast freight, No. 98.

In the absence of special contract, there is an implied obligation on a carrier to deliver freight at its destination, within a reasonable time. What is a reasonable time depends, in a large measure, upon the carrier's equipment and facilities, and the

nature of the freight to be carried. 2 Hutchinson on Carriers, sec. 652 (3rd ed.). Live stock requires more rapid transportation than coal or lumber, for instance, and it is the duty, as well as the custom, of railroad companies to furnish more rapid transportation for the former than for the latter. The usual time for shipping cattle from Philippi to Philadelphia is shown to be thirty-six hours, and if defendant's trains had been run on the usual time, the cattle would have arrived in Philadelphia Friday night, or early Saturday morning, in time to be sold in the Saturday's market. Plaintiffs having proven that the cattle arrived in Philadelphia ten or twelve hours later than the usual time, a *prima facie* case of negligence was established, and it was then incumbent on the railroad company to justify the delay. *Bosley* v. *Railroad Co.,* 54 W. Va. 563. It seeks to do so by proving the accident which happened to its engine before reaching Philippi, on the day the cattle were loaded on the cars. Defendant is not to be held liable for delay occasioned by unavoidable accident. 2 Hutchinson on Carriers, sec. 654. But, notwithstanding the accident, the duty still rested upon defendant to use reasonable diligence to carry the cattle to Philadelphia without unreasonable delay. Whether it did so or not, was a question for the jury to determine from all the facts and circumstances in the case, including the evidence relating to defendant's equipment and its facilities for hauling freight. 2 Hutchinson on Carriers, sec. 652. Defendant is only liable in this case for the failure, if any, of its employes to use reasonable care and diligence in the shipping of the cattle making due allowance for such delay as was attributable to the accident to the engine. The proof shows that the company maintained a roundhouse and repair shops at Grafton. It was, therefore, for the jury to say whether or not it was negligence in the company not to dispatch an engine from Grafton to Philippi, only twenty-four miles away, and bring the two car loads of cattle down to Grafton in time to connect with No. 98, instead of waiting until the crippled engine was repaired. Whether the company was negligent in not ascertaining by telegraph whether No. 82, destined for Grafton, carried any fast freight on that day for the east, instead of holding the cattle there until the arrival of No. 82, and then finding that it had

no such freight, is also a jury question. So also, the jury had a right to say whether it was negligence to hold the cattle at Cumberland from 1:45 P. M. to 7:40 P. M.

Objection is made to the measure of damages which the trial court allowed. Plaintiffs proved that the cattle arrived in Philadelphia too late for the Saturday market, and that they were compelled to hold them over and sell on the following Monday, when the market was fifteen cents per cwt. less than on Saturday. This is a correct rule for the measure of damages in such a case. 2 Hutchinson on Carriers, sec. 651. The reduced price at which plaintiffs were compelled to sell was a direct consequence of the delay, and was an injury to them, and, if the delay was occasioned by defendant's negligence, it is liable to plaintiffs for the difference in price of the cattle. The bill of lading contains a stipulation that, in the event of unusual delay or detention "caused by the negligence of said carrier or its employes or its connecting carriers or its employes, or otherwise, the said shipper agrees to accept as full compensation for all loss or damage sustained thereby the amount actually expended by said shipper in the purchase of food and water for the said stock while so detained." This stipulation is void. It is against the policy of the law to permit a common carrier to contract against its common law liability for its own negligence, or that of its employes. *Bosley* v. *Railroad Co.,* 54 W. Va., 563; 6 Cyc. 409; 1 Hutchinson on Carriers, sec. 450.

The court, at the instance of plaintiffs, gave the following instructions, viz: "The court instruct the jury that when the defendant company received the plaintiff's cattle for shipment, the law implies a contract on the part of the defendant that it would carry the said cattle safely to Philadelphia, and deliver the same at that place within a reasonable time, and that it was the duty of the defendant so to do; and if the jury believe that the said company did not deliver said cattle in Philadelphia within a reasonable time, then they shall find for the plaintiffs." This instruction leaves out of account any delay properly attributable to the unavoidable accident to the companys engine, and was evidently misleading, and should not have been given. The jury were not instructed as to the legal effect of any delay in the shipment occasioned by unavoidable accident. Under

this instruction they might have believed, and no doubt did believe, that the failure to deliver the cattle in Philadelphia within the usual scheduled time, to-wit, thirty-six hours, was an unreasonable delay, whereas, the correct rule applicable to this case would credit the railroad company with so much of the delay as was necessarily occasioned by the accident to the engine, and would hold it to the exercise of reasonable diligence for all the time after the accident.

The court refused defendant's instruction No. 1 which would have told the jury that, in the absence of any contract to deliver the cattle at their destination "at any specified time or date or for any particular market," then the defendant was not required to use any special diligence but was held to only ordinary and reasonable diligence. In view of plaintiffs' own testimony which proves that there was no contract to deliver at a specified time, or for a particular market, this instruction correctly states the law, and it should have been given. But it must be remembered that in view of the character of the freight, it being live stock requiring more rapid transportation than most other kinds of freight, and in view of the evidence concerning defendant's equipment and facilities for handling and transporting such freight, it is for the jury to determine what is ordinary and reasonable diligence as applied to this case. What would be ordinary and reasonable diligence in handling dead freight might not be reasonable diligence, under a similar state of facts, in handling and transporting live stock.

It follows from what we have said respecting the measure of damages, that the court did not err in refusing defendant's instruction No. 3. If, by the exercise of reasonable diligence, defendant could have delivered the cattle in Philadelphia in time to be sold on the Saturday market, and it failed to exercise such diligence, and in consequence thereof plaintiffs were compelled to hold them until Monday, and sell them in a less favorable market, defendant is liable for the difference in price.

Defendant moved the court to set aside the verdict and grant it a new trial. That motion should have been sustained.

Three instructions appear in the printed record, two of which are evidently drawn on behalf of plaintiffs and one on behalf of the defendant. These instructions, however, are not made parts

of the record by any bill of exceptions. It does not appear whether they were given or refused. Consequently, it is not necessary to discuss them.

For the foregoing reasons the judgment will be reversed, the verdict set aside, a new trial granted, and the case remanded.

*Reversed and Remanded.*