# CHARLESTON.

C. L. Lowe v. James C. Davis, Director General, Etc.

Submitted May 22, 1923.    Decided October 2, 1923.

1.  Carriers—*Carrier not Liable for Necessary Delay in Furnishing Car.*

    In the absence of special agreement by a railroad company to furnish a car ordered by a shipper to be placed at a certain point on a day named by the shipper, the carrier is not liable for necessary delay in delivering such car. (p. 522).

2.  Same—*Reasonable Time for Transportation of Live Stock Generally for Jury.*

    What is a reasonable time for the transportation of a shipment of live stock is generally a question for the jury, depending on the facts and circumstances of each case. (p. 522).

3.  Same—*Measure of Damages for Unreasonable Delay in Delivery of Shipment of Cattle is Difference in Market Between Day of Arrival and Day They Should Have Arrived.*

    The measure of damages for unreasonable delay in the delivery of a shipment of cattle is the difference in the market value of the cattle at the time when they were actually delivered and at the time when they should have been delivered; and where such cattle but for the negligence of the carrier should have been delivered for a certain market day, but were not, the shipper is entitled to the damages sustained by reason of a decline in prices before the next market day. (p. 524).

Error from Circuit Court, Summers County.

Assumpsit by C. L. Lowe against James C. Davis, Director General, etc.    Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Fitzpatrick, Brown & Davis* and *C. W. Strickling*, for plaintiff in error.

*R. F. Dunlap*, for defendant in error.

Miller, President:

This is an action in assumpsit for the recovery of damages alleged to have accrued to plaintiff by the negligence of defendant in handling a car load of cattle shipped by him from

Lowell, West Virginia, to Jersey City, N. J., over the lines of defendant and connecting carriers.

Of the various assignments of error the refusal of the trial court to strike out plaintiff's evidence and direct a verdict for defendant and the overruling of his motion to set aside the verdict and award him a new trial are mainly relied upon.

The first act of negligence alleged is the failure of defendant to furnish plaintiff a car at the time ordered, nor until four days later. The evidence shows that on August 30, 1919, plaintiff requested defendant's agent at Lowell to place at that point a car for his use on September 4th; that the agent on the same day notified the chief dispatcher at Clifton Forge, who had charge of the distribution of cars, of plaintiff's order and that at the time there was a shortage of stock cars, due to the extraordinary demand for such cars at the shipping season for cattle. The car ordered was placed at Lowell for plaintiff on September 8th. There is no evidence of any contract between the parties or of any promise on the part of defendant that a car would be available at any particular time. From these facts we are of opinion that the trial court properly held that plaintiff was not entitled to damages for the failure of defendant to furnish the car earlier than September 8th. *Woodford* v. *Railroad Company*, 70 W. Va. 195.

Plaintiff's further claim is that he was damaged by the extra drift in the weight of the cattle en route, the decline in the market, and the reduction in the selling price due to their wilted and stale condition, all because of the delay in transportation. The car left Lowell at 5:45 P. M., September 8th, and arrived at Jersey City September 12th at 11:45 P. M. Plaintiff's evidence is that from his experience in shipping cattle between these two points this shipment should have reached Jersey City Thursday, September 11th, in time for the market that day. It appears that the market days at that point were Mondays, Wednesdays and Fridays. So, whatever damages plaintiff sustained, if any, must be governed by the extra drift in the cattle while en route and by the fact that they arrived too late for Friday's market and were not sold until the following Monday, Saturday not being a market day. The cattle were driven to Lowell on September 4th, where they were put on pasture to await the arrival of

the car. At plaintiff's farm, a distance of twelve or fourteen miles from the shipping point, they weighed 26,380 pounds, on their arrival at Jersey City, 23,800 pounds, and when sold, 23,780 pounds, showing a drift of 2,580 pounds in transit, and of only 20 pounds while in the pens at Jersey City. They were not weighed at Lowell. The evidence of the commission merchant in whose care the shipment was made and who sold the cattle, is to the effect that the decline in market from Friday to Monday was from 50 to 75 cents per cwt., and that the loss in value due to the stale condition of the cattle was about 25 or 30 cents per cwt. The actual drift per head between the farm and the market place was 107.5 pounds. Plaintiff's evidence is to the effect that the average drift per head between Lowell and Jersey City, based on his prior experience, was 60 pounds.

Before reaching Charlottesville, Va., the first point where the cattle were unloaded for rest, water and feeding, there was a delay of twelve or thirteen hours occasioned by a derailed train ahead of the stock train; but by stipulation of counsel on the trial it was agreed that this accident was due to a latent defect in a truck frame which could not have been ascertained by inspection and that the defendant was not chargeable with negligence for this delay.

The car in question was traveling under a thirty-six hour limit, pursuant to the federal law providing that no railroad shall confine cattle in cars for a period longer than twenty-eight consecutive hours without unloading them in a humane manner into properly equipped pens for rest, water and feeding, for a period of at least five consecutive hours, but which provides that the shipper may by written request extend the time of confinement to a period of thirty-six hours, which was done in this case. The cattle were unloaded, watered and fed at Charlottesville the day following their departure from Lowell, and were reloaded either at 3:00 A. M. or 5:00 A. M. the following morning, and left the same morning at 9:10 for Potomac Yards, where they arrived at 7:54 P. M. the same day, ten hours and forty-four minutes after leaving Charlottesville. The next stock train left Potomac Yards for Jersey City at 1:50 the next morning, five hours and fifty-six minutes after the arrival of the car in question. Defendant

contends that a rule of the Pennsylvania Railroad Company, over whose lines the car was routed from Potomac Yards to Jersey City, required sixteen hours and forty-five minutes of unexpired time to run between those points, and that if the car had been forwarded on the 1:50 train without unloading the cattle, the thirty-six hour limit would have expired before the train reached its destination, and that there were no facilities for unloading between those points. The next stock train leaving Potomac Yards was at 1:30 P. M. Accordingly the cattle were unloaded, and forwarded by the 1:30 P. M. train, reaching their destination Friday, September 12th, too late for the market that day.

Whether there was negligence on the part of defendant in handling the shipment of cattle in question was a question for the jury, from all the facts and circumstances in evidence; and we are of opinion that we can not set aside their finding on this question. *Woodford* v. *Railroad Company, supra.*

Defendant contends that if plaintiff is entitled to recover any damages, the verdict of the jury is excessive. The jury evidently found that defendant was guilty of delay in transportation. The rule is that an element of the measure of damages in such cases is the difference between the market value of the cattle at the time when they were actually delivered and the time when they should have been delivered. *Woodford* v. *Railroad Company, supra.* Without taking into consideration the extra drift in weight of the cattle, which defendant contends was caused by the cattle being on short pasture at Lowell, the decline in market from Friday to Monday, the lower price received for the cattle because of their stale condition, and the cost of keeping them in the pens at Jersey City from the time of their arrival until sold, based on the figures given in evidence by the commission merchant, would show a loss of $283.84. Plaintiff's verdict was $350.00. Since the jury evidently found that there was unreasonable delay in handling this shipment, they may also have found that a part of the alleged extra drift was due to that delay, enough to make up the difference between their verdict and the loss to plaintiff which the evidence shows was justified by the.

holding of the cattle for three days at the market place. We can not say they were not·justified in so finding.

*The judgment will be affirmed.*