62   31
162  292
62   31
65   181

MUTUAL RESERVE FUND LIFE ASSOCIATION v. HARRY
E. BOYER.

No. 11,592.   (61 Pac. 387.)

INSURANCE COMPANY—*Jurisdiction—Service on Foreign Company—Statute Construed.* The fact that a foreign life insurance company had at one time transacted business in this state under a license issued by the superintendent of insurance, and that it had filed in his office as required by statute its "written consent, irrevocable," to the institution of suits against it in the courts of this state and the issuance of summons against it directed to the superintendent of insurance, does not subject it to suit in this state on a policy of insurance wholly executed in another state, if, prior to the issuance of such policy, it had withdrawn or been expelled from this state and had entirely ceased to do business here.

Error from Wyandotte court of common pleas; W. G. HOLT, judge. Opinion filed June 9, 1900. Reversed.

*Miller, Buchan & Morris, Warner, Dean, McLeod & Holden*, and *Geo. Burnham, jr.*, for plaintiff in error.

*McGrew, Watson & Watson, W. H. McCamish*, and *J. O. Fife*, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action on a policy of life insurance. The insurance was taken on the life of Mrs. Clara A. Boyer in favor of her husband Harry E. Boyer. Judgment was rendered in favor of the plaintiff, from which the defendant company has prosecuted error to this court. Before pleading to the merits the insurance company made a motion to set aside the service on it because of lack of jurisdiction in the court to compel it to respond to the summons issued against it. This motion was overruled. Is

then filed a plea in abatement to the jurisdiction of the court, based on the same reasons as those set out in the motion. A demurrer to this plea was interposed by the plaintiff and sustained. The matters averred in the plea and the evidence adduced in support of the motion were the same and the two will be considered together.

The allegations of fact contained in the plea were of course admitted by the demurrer. These allegations and the evidence submitted under the motion were that the defendant was a foreign life insurance company, and had been at one time authorized to do business in this state, but about two years prior to the taking out of the policy in suit its license had been revoked by the superintendent of insurance, since which time it had not maintained any agency or transacted any business of any character whatever in the state ; that application was made for the policy in Kansas City, Mo., through an agent whose office was in that city ; that the medical examination of the applicant was made in Kansas City, Mo., by a resident physician there ; that the policy was executed at the home office of the company in New York and delivered to the insured in Kansas City, Mo. ; that the first premium was paid in that city; that the residence of the insured as stated by her in her application was in Kansas City, Kan. This last-mentioned fact, although proved under the motion, was not set out in the plea in abatement. All the others were. However, for the purpose of a consideration of the question of law involved, it will be treated as though set out in the plea. The summons to the defendant was served on the state superintendent of insurance, in accordance with section 104, chapter 74, General

Statutes of 1897. (Gen. Stat. 1899, § 3283.) The material portion of this section reads as follows:

"Every such company, on applying for admission and authority to transact business in this state, and as a condition precedent to obtaining any such authority, shall file in the insurance department its written consent, irrevocable, that actions may be commenced against such company in the proper court of any county in this state in which the cause of action shall arise, or in which the plaintiff may reside, by the service of process on the superintendent of insurance of this state, and stipulating and agreeing that such service shall be taken and held in all courts to be as valid and binding as if due service had been made upon the president or chief officer of such corporation. Such consent shall be executed by the president and secretary of the company, authenticated by the seal of the corporation, and shall be accompanied by a duly certified copy of the order or resolution of the board of directors, trustees, or managers, authorizing the said president and secretary to execute the same. Actions against any such insurance company may be brought in any county where the cause of action arose, or in which the plaintiff may reside. The summons shall be directed to the superintendent of insurance, and shall require the defendant to answer by a certain day not less than forty days from its date."

We think the motion to set aside the service should have been sustained, and that the demurrer to the plea in abatement should have been overruled. By the rules of comity between states, corporations chartered in one of them may be admitted to do business in the others, but unless so admitted they are not subject *in personam* to the jurisdiction of the courts outside the domicile of their creation. The rules of obligation resting on corporations, under the doctrine of interstate comity, to respond to the demands of suitors in the courts of the states where they may be doing

3—62 KAN.

business, and their exemption from the obligation, are
qnite well stated in *St. Clair v. Cox*, 106 U. S. 356, 1
Sup. Ct. 359, 27 L. Ed. 224:

"Whilst the theoretical and legal view, that the
domicile of a corporation is only in the state where it
is created, was admitted, it was perceived that when
a foreign corporation sent its officers and agents into
other states and opened offices, and carried on its busi-
ness there, it was, in effect, as much represented by
them there as in the state of its creation. As it was
protected by the laws of those states, allowed to carry
on its business within their borders, and to sue in their
courts, it seemed only right that it should be held re-
sponsible in those courts to obligations and liabilities
there incurred. . . . Without considering whether
authorizing service of a copy of a writ of attachment
as a summons on some of the persons named in the
statute—a member, for instance, of the foreign corpo-
ration ; that is, a mere stockholder—is not a departure
from the principle of natural justice mentioned in *The
Lafayette Ins. Co. v. French et al.*, 18 How. 407, 15 L. Ed.
451, which forbids condemnation without citation, it
is sufficient to observe that we are of opinion that
when service is made within the state upon an agent
of a foreign corporation it is essential, in order to sup-
port the jurisdiction of the court to render a personal
judgment, that it should appear somewhere in the
record—either in the application for the writ or ac-
companying its service, or in the pleadings or the
finding of the court—that the corporation was en-
gaged in business in the state. The transaction of
business by the corporation in the state, general or
special, appearing from a certificate by the proper offi-
cer or a person who is its agent, there would, in our
opinion, be sufficient *prima facie* evidence that the agent
represented the company in the business. It would
then be open, when the record is offered as evidence
in another state, to show that the agent stood in no
representative character to the company; that his
duties were limited to those of a subordinate employe,

or to a particular transaction, or that his agency had ceased when the matter in suit arose.''

In Morawetz on Corporations, section 980, it is said :

''If a corporation is not engaged in trade and makes no contracts in a foreign state, justice seems to demand that it should not be subjected to suits in that jurisdiction ; and it has been held, therefore, that under these circumstances the agents of the company have no authority to represent it in receiving service of writs, or entering a voluntary appearance.   Service of process upon the president or other managing agent of a corporation, while merely casually present in the jurisdiction of another state, does not constitute personal service upon the corporation itself.''

The cases in which the question has oftenest arisen have been those where service of summons was made on an officer or agent of a foreign company casually outside the jurisdiction of his own state.   In such cases the courts have held almost uniformly that the service was bad.   In *The Camden Rolling Mill Co. v. The Swede Iron Co.*, 32 N. J. Law, 15, the court said :

'' Upon general principles, and in the absence of statutory innovations, it is to be regarded as settled, in this state at least, that if a foreign corporation at the time of the commencement of suit, does not do business, and has not any office or place of business in this state, the contract sued on, not having been entered into in this state, such corporation, except by its own consent, cannot be brought within the jurisdiction of this or any court of this state.   Under such circumstances, the officers or agents of such foreign corporation, when they come into this jurisdiction, do not bring with them their official character or functions, and are not to be esteemed, out of the sovereignty by the laws of which the corporate body exists, the representatives for the purpose of responding to suits of law of such corporate body.''

In this and other like cases the ground upon which the claim of jurisdiction was rested was that the statute of the state in which the suit was filed provided that process against foreign corporations might be served upon their officers or agents ; as, for instance, an act of Pennsylvania which provided : ''Process may be served upon any officer, agent or engineer of such corporation, either personally or by copy, or by leaving a certified copy thereof at the office, depot or usual place of business of said corporation ; and such service shall be good and valid in law to all intents and purposes.'' (*Phillips v. Library Co.*, 141 Pa. St. 462, 21 Atl. 640.) However, as against such contentions, the view of the court has been that the operative sphere of the statute was limited to cases in which the foreign corporation was subject, upon general principles of jurisdiction, to suits in the courts of other states than those of its creation. Thus, in *The Camden Rolling Mill Co. v. The Swede Iron Co.*, supra, it was said :

''We find thus a mode is prescribed of effecting service of process on foreign corporations ; but the question still remains, in what cases can they be so served ? Can they be so served when, upon general principles, the courts of this state have no jurisdiction ? The statute does not say so. There is not a word in it indicative of an intention to amplify the capacity of the court with regard to that class of cases in which these creatures of foreign laws are parties— defendants. The statute does not give any new right of suit ; nor does it purport to take away any of the privileges of foreign corporations. It simply appoints a method of bringing corporations invested with a foreign character into the courts of this state, when such courts have jurisdiction over them. We think that the act in question has no scope beyond this.

"It may be further observed that the interpretation contended for in behalf of the plaintiff is one that could be judically adopted only by force of the plainest manifestation of legislative intent.  It would seem to be an improbable construction, for it is difficult to believe that it was the design to place within the jurisdiction of our courts all the corporations of the world, merely from the fact that a director, clerk or other subordinate officer happened to come upon the territory of the state."

The precise question, leaving out of view the point next to be noticed concerning the nature of the authority to the superintendent of insurance required by our statute from foreign life insurance companies, was determined in *People v. Commercial Alliance Life Ins. Co.*, 40 N. Y. Supp. 269.  In that case it appeared that a judgment had been rendered in the state of Maine against the insurance company.  The judgment was sued upon in New York.  The statute of Maine provided for service on the agents of foreign life insurance companies, with a proviso that if no such agent could be found service might be made on the insurance commissioner.  The company had ceased to do business before the institution of suit against it.  In the case cited the supreme court of New York ruled and remarked as follows:

"The judgment must stand, if at all, on the service made on the state insurance commissioner, which was on the 3d day of July; and the referee found, in substance, that that service was ineffectual to bind the company in New York, because on that date the company was not doing business in the state of Maine, and that the Maine court had no jurisdiction of the company to render a judgment enforceable outside of the state of Maine.  When a foreign corporation undertakes to transact business in a state other than that in which it is incorporated, it undoubtedly sub-

mits itself to the authority of the courts of that other
state and will be bound by the statutory provisions
respecting such courts obtaining jurisdiction over it.
*Gibbs v. Queen Insurance Co.*, 63 N. Y. 114. While
this Commercial Alliance Company was transacting
business in the state of Maine it was subject to the
provisions of the statute of Maine respecting the serv-
ice of process in an action against it on the state
commissioner of insurance, in the absence of any
authorized agent of the company upon whom service
might be made. But that subjection does not last for-
ever. As the Commercial Alliance Insurance Com-
pany had ceased to do business on the 1st day of July,
1894, had withdrawn from the state, and had no
authorized agent upon whom service might be made
after that date, the substituted service on the state
commissioner would not bind it as equivalent of per-
sonal service. The effect of the statute of Maine was
to constitute the insurance superintendent the agent
of the company to receive process under certain cir-
cumstances, viz., while such company was doing
business in the state. While so doing business, the
superintendent was empowered to receive process if
there were no agent of the company upon whom it
might be served. But after the 30th of June, 1894,
it was not a foreign corporation doing business within
the state of Maine, and the Maine courts had no juris-
diction over it to render a judgment *in personam*
against it on substituted service. Whether the judg-
ment may stand as one enforceable against property
of the company in Maine it is not necessary to con-
sider.''

The claim of the defendant in error in this case in
favor of the validity of the service of summons on the
superintendent of insurance, and the consequent juris-
diction of the court, is rested upon that portion of our
statute hereinbefore quoted which requires foreign life
insurance companies, as a condition precedent to the
transaction of business in the state, to ''file in the in-

surance department its written consent, irrevocable, that actions may be commenced against such company . . . by the service of process upon the superintendent of insurance of this state," etc. It must be admitted that this statute introduces an element of difficulty in the question. Were it not for the statute, no reasonable doubt could exist, we think, as to lack of jurisdiction of the courts of this state over the plaintiff in error. The instrument filed with the superintendent of insurance was in the nature of a power of attorney. What meaning must be given to the term "irrevocable" used in this power of attorney? Does it mean, as the word implies, "never to be revoked; never to be abrogated, annulled or withdrawn"? We cannot think it bears such signification.

It is a cardinal rule in the interpretation of statutes that the words used in them are not necessarily to be taken in their literal and absolute sense, but in that sense which will subserve the purpose the lawmakers had in using them. The spirit and policy of a statute must be examined rather than the literal definition of the words employed. If the word "irrevocable" was used in its literal and unqualified sense the power conferred will last, therefore, as long as the life of the insurance company, though that be a thousand years, and that, too, though the company rigidly keeps out of the jurisdiction of this state throughout the whole of such period of time. Though all the business it transacted in this state during the time it acted here under the license of the insurance department be entirely closed out; though every policy issued by it while here be fully paid, yet, if a thousand years hence a policy-holder residing in another state should wish to sue in the courts of this state, the company, under the theory contended for by the defendant in error,

must submit to the jurisdiction of our courts. It cannot be that the legislature of this state, in the enactment of the statute quoted, designedly made provision for cases so far in the time to come and in which both the present and future citizens of this state could have no possible interest. The purpose of the statute was to provide our own citizens with a local forum for the trial of controversies with foreign life insurance companies during the time such companies were enjoying the privilege of being allowed to transact business within our jurisdiction under the favor and protection of our laws, with the like privilege to citizens of other states to resort to the same forum during the same period of time, and, perhaps, though it is not necessary for the purposes of this case so to decide, to provide for our citizens a local forum in which, after the withdrawal or expulsion of foreign life insurance companies, to sue on contracts made by them during the period they transacted business here.

As before remarked, the instrument of consen filed with the superintendent of insurance is in the nature of a power of attorney. There is, we think, no difference in respect to revocability between a power of attorney executed between private individuals as a matter of contract and one authorized or required by statute between a private individual and a public officer. All powers of attorney are revocable by the donor of the power except when coupled with an interest in the donee. Though they be by their terms irrevocable, they nevertheless may be revoked by the donor, except in cases where the donee has an interest in their continuance. It may be conceded that the superintendent of insurance has an interest, as a public representative, in the continued exercise of the power conferred upon him to accept service for

foreign life insurance companies, but that interest must surely terminate with the termination of the subject-matter in respect to which the authority was conferred. When within the intent of the parties to the instrument there no longer remains anything for the authority to act upon, the power to act must of necessity end. "Where the agency was created for the purpose of performing some specific act or acts, it will be terminated by the accomplishment of the purpose which called it into being. Having fulfilled its mission it is henceforth *functus officio*." (Mech. Agency, § 201.) With the withdrawal of the insurance company from this state the subject-matter in respect to which the power was conferred, to wit, the business here transacted by the company, terminated, and, with the probable exception above mentioned, the company ceased to be amenable to our jurisdiction.

In the case under consideration, the motion to set aside the service and also the plea in abatement set forth in positive terms that the insurance company had ceased to do business in this state long before the policy in suit was issued; that long before that time it had ceased to maintain here any agencies for the transaction of business, and that the contract of insurance sued upon was executed wholly outside this state. Now, as to what should be regarded as doing business or maintaining agencies in this state, or as to when a contract should be regarded as having been made without this state or within it, we do not assume to determine or intimate. It may be that some of the several instruments of which, as the record showed, the contract in suit was composed, were executed in this state, and therefore that such contract should be in law regarded as made within this state

It may be that the insurance company was in fact doing business in this state notwithstanding its claim of abandonment. It may be that the mere collection of premiums in this state from citizens here is such a doing of business as to subject the company to the jurisdiction of our courts. Issues of fact as to all these possible cases were tendered by the insurance company. In our judgment, they should have been tried, instead of ruling their legal sufficiency against the company.

Near the close of the trial that was had upon the merits, after the demurrer to the plea in abatement had been sustained, the agent who solicited Mrs. Boyer's application for insurance gave some testimony from which it might be inferred that the solicitation of the application was made by him in Kansas and not in Missouri. However, this testimony was by no means direct, nor was it offered for the purpose of establishing such solicitation here as a fact in the case. It seemed to have been casually elicited as prefatory or incidental to other matters. It was not sufficient to justify a claim that so much of the insurance transaction was performed in this state. Besides, it was not given upon the issue tendered either by the motion or the plea in abatement, and therefore, however explicit and positive it might have been, it could not be considered by us.

Our judgment is that the case should be reversed for a trial upon the plea in abatement; and, of course, if the issue as to jurisdiction should be found against the company, then for a new trial upon the merits of the case. It is, therefore, reversed for proceedings in accordance with this opinion.