## ABRAHAM, Ex'r, v. STEWART BROS. COTTON CO., Inc.

No. 20619. Opinion Filed July 12, 1933.

Rehearing Denied Sept. 19, 1933.

Herbert Abraham and J. D. Lydick, for plaintiff in error.

Ames, Cochran, Ames & Monnett, for defendant in error.

RILEY, C. J. Defendant in error, hereinafter referred to as plaintiff, commenced this action in the district court of Oklahoma county, against Joe Abraham, doing business as the Bristow Cotton Oil Company, to recover damages for the breach of a contract for the sale and delivery of 1,000 bales of cotton. The contract is in writing, dated August 28, 1926, and is as follows:

"Shawnee, Oklahoma,
"August 28, 1926.

"Bristow Cotton Oil Company,
Bristow, Oklahoma.

"Confirmation.

"Dear Sir:

"We beg to confirm having purchased from you as follows:

"Quantity: One thousand (1000) bales of cotton.

"Grade: Basis middling nothing below middling. 50 pts. up for St. Mid.

"Staple: Government 1-1/16 inch.

"F. O. B. cars interior.

"Delivery: Equal portions October, November.

"Reimbursement: Sight draft attached against outbound bill of lading.

"Price: 50 points on December N. Y. sellers call, not earlier than 10 days before date of delivery.

"Remarks: Seller has privilege of delivering in 100 bale lots and may at its option deliver strict middling grades against this sale.

"This sale to be governed by the rules and regulations of the Oklahoma State Cotton Exchange.

"Yours truly,

"Stewart Brothers Cotton Company, Inc.
"By I. A. Miller.

"Acceptance:

"We hereby confirm sale on terms and conditions stated above.

"Bristow Cotton Oil Company,
"By Louis Abraham."

The petition alleges failure to deliver any part of the cotton, and alleges that plaintiff had been damaged in an amount equal to the difference between the contract price and the value of the cotton at the time and place for delivery, which sum is alleged to be $6,000. Summons was issued and served upon defendant, Joe Abraham, and he filed his answer on May 25, 1927, in which he admitted the contract, but denied the breach thereof on his part, and in effect alleged a tender by him in due time of the cotton called for by the contract, and that plaintiff refused to accept same upon the claim that the cotton tendered did not come up to the standard and grade called for by the contract. Thereafter plaintiff filed its reply, denying each and all the allegations of new matter in the answer.

The cause was assigned for trial September 26, 1927, but was stricken from the assignment by agreement.

On December 10, 1927, plaintiff filed a motion for revivor of the action in which it is set out that defendant, Joe Abraham, departed this life on or about November, 1927, in Creek county, Okla., and that Louis Abraham had been appointed executor of the estate of Joe Abraham, deceased. The revivor in the name of Louis Abraham, executor of the estate of Joe Abraham, was prayed for. Notice of this application for revivor was served upon Louis Abraham, executor of the estate of Joe Abraham, deceased, by the sheriff of Creek county, the return of the sheriff showing such service was filed January 5, 1928. The application for revivor was presented to the court on January 25, 1928, both parties being present by counsel, the executor appearing by the same counsel who had signed the answer for Joe Abraham. Thereupon the court entered an order of revivor which, after reciting the service of the notice and application for revivor, states:

"And the court being further satisfied that Joe Abraham, the original defendant herein, died on or about the 6th day of November, 1927, and that the cause of action stated in the petition is one which survives against the personal representative of the deceased, and that Louis Abraham is a duly and regularly qualified and acting executor of the said estate, and that said action ought to be revived in the name of Louis Abraham, executor of the estate of Joe Abraham, deceased,

"It is therefore ordered and adjudged that said action be, and the same is, hereby revived against Louis Abraham, executor of the estate of Joe Abraham, deceased, and that all further proceedings therein be against the said Louis Abraham, executor of the estate of Joe Abraham, deceased."

Thereafter the cause was set for trial and continued from time to time until January 14, 1929, at which time it was called for trial. No amendment to the petition was made alleging the death of defendant, Joe Abraham, and the appointment of Louis Abraham as executor, nor was any amendment made alleging the presentation to and rejection of the claim by the executor. With the pleadings in this condition, both parties announced ready for trial, and a jury was impaneled. Thereupon the plaintiff offered in evidence the contract for the sale of the cotton. This was admitted without objection. Then the plaintiff offered in evidence the claim that had been presented to the executor, which was indorsed as follows:

"The above claim presented to the undersigned executor of the estate of Joe Abraham, deceased, on the 30th day of November, 1927, and the same is hereby disallowed and rejected.

"Dated November 30, 1927.

"(Signed) Louis Abraham,

"Executor of the Estate of
"Joe Abraham, Deceased."

This was also admitted in evidence without objection. Thereupon the following stipulation was dictated into the record:

"It is stipulated and agreed that this suit was filed on April 27, 1927, and service obtained on Joe Abraham during his lifetime. That Joe Abraham died on or about the 6th day of November, 1927, and the action was revived in the name of Louis Abraham, executor of the estate of Joe Abraham, deceased, on January 25, 1928. And it is further agreed that prior to the revivor and prior to the presentation and disallowance of the claim which is filed here as exhibit 3, Louis Abraham had been duly appointed executor of the estate of Joe Abraham, deceased, by the county court of Creek county. Okla., and that he is now, at this time, the duly appointed, qualified and acting executor of the estate of Joe Abraham, deceased. It is further agreed that the answer filed during the lifetime of Joe Abraham, deceased, may be adopted and considered as the answer of Louis Abraham, executor of the estate of Joe Abraham, deceased."

Thereupon the following objection was made:

"Mr. Dudley: At this time, if the court please, and after the introduction of the claim that was filed against the estate and denied, the defendant objects to the introduction of any further evidence in this case on behalf of the plaintiff on the petition on file for the reason that the action must have been brought upon the disallowed claim within the statutory time and the plaintiff cannot maintain and prosecute the present suit on the petition originally filed herein."

The objection being overruled and exceptions saved, the parties offered their evidence, consisting of some 700 pages, and the cause was submitted to a jury, resulting in a verdict for plaintiff in the sum of $4,375, with interest at 6 per cent. on $1,875 from October 31, 1926, and interest at 6 per cent. on $2,500 from November 30, 1926. Motion for new trial was duly filed, setting up some twelve separate grounds. The first six went to alleged errors in the admission of evidence. The seventh and eighth went to alleged errors as to giving two of the instructions. The ninth alleged error is the refusal to direct a verdict for defendant. The tenth is the alleged ground of uncertainty in the contract. The eleventh alleges that the verdict was excessive, and the twelfth is "errors of law occurring at and during the trial and duly excepted to by the defendant." Motion for new trial being overruled, judgment was entered upon the verdict, and defendant appeals.

The specifications of error in the petition in error are substantially the same as in the motion for a new trial, with the additional one of error in overruling the motion for new trial. We have set out somewhat at length the record made in the beginning of the trial, and the motion for new trial and the petition in error, in view of the principal contention now made that the petition of plaintiff was wholly insufficient to support the judgment for failure to amend so as to allege the death of defendant, Joe Abraham, the appointment of the executor, and the presentation of the claim to him and his rejection thereof.

In the original brief of defendant, filed by counsel other than that representing defendant at the trial, the question is not raised. It is first raised in a supplemental brief. It is apparently conceded that this question is not properly presented here unless it comes under the twelfth specification of error in the motion for new trial, and the thirteenth specification in the petition in error, viz., errors of law occurring at and during the trial and duly excepted to by defendant.

The first proposition presented is that no action was ever commenced against the executor because no petition whatsoever as against the executor was ever filed in the district court, and the executor filed no pleading. The assertion that the executor filed no pleading is clearly untenable under the record. The stipulation quoted above, among other things, says:

"It is further agreed that the answer filed during the lifetime of Joe Abraham, deceased, may be adopted and considered as the answer of Louis Abraham, executor of the estate of Joe Abraham, deceased."

It is difficult to understand how, in the face of such record, it can be said that the executor filed no pleading.

It is equally difficult to understand how it can be said that no action was ever commenced against the executor. True the action was originally commenced against Joe Abraham in his lifetime. But a complete record is made reviving the action against the executor. It is true that additional allegations were appropriate and perhaps requisite in order to state a perfect cause of action against the executor, such as alleging the presentation of the claim to the executor in due time and the rejection thereof, and also allegations of the death of the original defendant and the appointment and qualification of the executor. Unquestionably the action was pending against the executor from and after the order of revivor so as to permit the proper amendments had request been made for leave to amend.

Counsel in their supplemental brief assert that the executor objected to going to trial upon the petition upon the ground that the case could not be tried against the executor upon the original petition. Again counsel are in error. The executor filed no demurrer and made no objection whatever to the sufficiency of the petition when the cause was called for trial. He did not object to the introduction of any evidence upon the ground that the petition did not state a cause of action as against him. On the other hand, he consented to the introduction in evidence of the contract. He also consented to the introduction in evidence of the claim presented to him and his rejection thereof. In addition thereto, he

stipulated in the record that a suit was filed against Joe Abraham April 27, 1927; service obtained upon Joe Abraham in his lifetime; that Joe Abraham died November 6, 1927; that the action was revived in the name of Louis Abraham, executor of the estate of Joe Abraham, deceased, on January 25, 1928; that prior to the revivor, and prior to the presentation and disallowance of the claim, which had already been admitted without objection, Louis Abraham had been duly appointed executor of the estate of Joe Abraham, deceased, and that he was then such duly appointed, qualified, and acting executor of the estate of Joe Abraham. This stipulation, together with the claim, contains every essential fact necessary to have been pleaded by way of amendment in order to state a complete cause of action against the executor. It amounts in substance to an amendment of the pleadings. At least it shows such a state of facts that an amendment of the petition ought to have been allowed, if leave to make it had been asked in the trial court, to conform to the evidence adduced without objection, unless the same is too late. It must be borne in mind that up to this point no objection whatever had been made. At this point counsel for defendant made the objection to the introduction of further evidence for the reason that "the action must have been brought upon the disallowed claim within the statutory time, and the plaintiff cannot maintain and prosecute the present suit on the petition originally filed herein."

Counsel did not then point out to the court the specific grounds upon which he was objecting to the sufficiency of the original petition, or the specific reasons the original petition was not applicable, or that any amendment thereof was necessary. The objection amounted only to a strong suggestion to the court and counsel for plaintiff that the pleadings should have been amended so as to allege the facts before stipulated and perhaps to suggest that, if amendment should be made, it would be too late.

Clearly the plaintiff had the right to amend the petition in this respect at any time within three months after November 30, 1927, the date the claim was rejected by the executor.

In Walker Drilling Co. v. Carlew Drilling Contractors, 109 Okla. 7, 234 P. 598, it is said:

"The burden was on plaintiff to both plead and prove the presentation of the claim to the administratrix and its disallowance within the statutory period of time. It did not do either."

As a general rule parties may by agreement or consent try or litigate issues outside of those made by the pleadings or waive the want of a pleading. 49 C. J. 845. Where, by reason of an omission of an essential fact, the petition fails to state a cause of action, the admission of that fact by counsel for defendant, in open court, is a waiver of the defect. Probst v. St. Louis Basket Co., 200 Mo. App. 568, 207 S. W. 891; Morris v. Oregon Short Line Ry. Co., 36 Utah, 14, 102 P. 629.

In the Probst Case, supra, it is said:

"We refuse to reverse and remand this cause on the sole ground that plaintiffs' petition was defective in failing to contain a necessary allegation, when the record of the case shows that no objection was made by the defendant during the trial to the introduction of evidence on behalf of the plaintiffs to prove the truth of such fact, the allegation of which was omitted from plaintiffs' petition, and when counsel for defendant, in open court, during the progress of the trial, solemnly admitted that the present suit had been instituted by plaintiffs within one year from the date of the former judgment of nonsuit, and as the attorney for defendant put it, 'because there is no use in denying the record.' To thus lie in wait for an adversary and here raise the point of the omission of a necessary fact in plaintiffs' petition, as grounds for a reversal, which fact defendant has solemnly admitted the truth of during the trial of the case, is a practice which we will not subscribe to."

Defendant cites a number of cases which he contends hold the executor has no power to waive such a defect in a petition. The cases cited are in the main to the effect that an executor is without power to waive presentation of a claim within the statutory time, or to waive the commencement of an action within the time prescribed by law. That is not the question here. The question is the power of the executor to waive defect in the pleadings by admission in open court of the existence of the facts which might otherwise be necessary to plead and prove.

The right to amend in the particulars here involved was before the court in Lewis Historical Publ. Co. v. Greene (R. I.) 100 Atl. 1017, wherein it was held:

"A declaration against administrators may be amended two years after suit was

started to show that the claim sued on was filed against the estate and disallowed within six months before suit was instituted in compliance with Gen. Laws 1910, c. 314, secs. 3, 6, 11, since such amendment does not change the cause of action."

So long as the right to amend existed, the amendment may be waived by permitting proof of presentation and disallowance of the claim without objection and the stipulation of the existence of the essential facts which the petition omitted to allege. We will treat the pleadings as having been amended to conform to the facts proved and stipulated.

Defendant asserts that the court erred in permitting the introduction of a letter admitted to have been written by Joe Abraham during his lifetime, the letter being identified by a Mr. Taylor, manager of the Houston office of the plaintiff company. The objection is that the letter is incompetent under section 588, C. O. S. 1921 [O. S. 1931, sec. 271], which provides that no party to a civil action shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by said party with a deceased person when the adverse person is the executor, etc.

The contention is not well taken for two reasons: First. The question has been expressly decided contrary thereto by this court in First Nat. Bk. v. Davidson-Case Lbr. Co., 52 Okla. 695, 152 P. 836, wherein it is said:

"We do not think the admission of the evidence of Tompkins as to his conversation with Carr, upon the ground that said Tompkins was agent and manager of the plaintiff, was in violation of section 5049, Rev. Laws 1910, inasmuch as he was not a party to the litigation, nor in any manner interested therein, nor disqualified as a witness under said section."

Second. The witness was not called upon to testify in his own behalf in respect to any transaction or communication had personally with deceased, but was merely called upon to identify a letter admitted by defendant to have been written by Joe Abraham in his lifetime.

Defendant contends that there was reversible error in permitting plaintiff to introduce evidence relative to purchase by plaintiff of some 374 bales of cotton in Arizona, which was described as strict middling cotton, 1 1/16 to 1⅛ inch, at 125 on December and charged the difference in cost, after adjustment of difference in the freight rate, to defendant, on the October cotton. Plaintiff advised the seller of the purchase, etc., by telegram, and stated therein that it was charging defendant with 75 points, which it is agreed means $3.75 per bale on the 500 bales called for in October. Defendant contends that, the Arizona cotton being of a higher grade than that called for in the contract, plaintiff was not entitled to purchase it and charge the difference in cost to the seller, and was not entitled to introduce any evidence of that transaction.

We think, however, there is no substantial error in the admission of the evidence in the record. The trial court instructed the jury that defendant was not bound by the purchase of the Arizona cotton, and that plaintiff was bound by the statement in the telegram advising Joe Abraham that plaintiff was charging the seller with but 75 points on the entire 500 bales to be delivered in October, and instructed the jury that regardless of the difference in the price of cotton on October 31st, plaintiff could not recover more than $3.75 per bale on the 500 bales contracted to be delivered in October; and also instructed the jury that if the evidence did show that the cotton called for by the contract was worth anything less than 125 on December middling cotton, plaintiff could recover no more than the actual difference in the market value. The result was that defendant lost nothing whatever by reason of the Arizona transaction, or the admission of the evidence relative thereto. Defendant benefited by the telegram in that the court instructed the jury that plaintiff was limited by reason of the telegram to the recovery of $3.75 per bale for the October cotton. There was evidence in the record that at that time the cotton called for by contract, f. o. b. Oklahoma points, was worth from 125 to 150 points on New York December cotton. midding basis.

Defendant further contends that the verdict is excessive for the reason that interest is allowed on a part of the judgment from October 31, 1926, and the balance from November 30, 1926, and contends that the claim of plaintiff is and was unliquidated, and that interest is not recoverable except from the date of the judgment. It is pointed out in Concordia Ins. Co. v. Sch. Dist., 282 U. S. 545, 75 L. Ed. 528, that prior to American Eagle Fire Ins. Co. v. Lively, 142 Okla. 248, 286 P. 797, this court had never laid down a definite rule as to the date from which a plaintiff was entitled to recover interest upon an un-

liquidated claim. There is an abundance of evidence tending to show that the fair market value of the cotton of the grade and staple called for by the contract, f. o. b. Oklahoma points, was from 125 to 150 points up on the New York price, middling cotton from October 31, to November 28, 1926, and there is some evidence that it was even higher. The jury was instructed, as pointed out, that because of the statement made in the telegram relative to the Arizona cotton, plaintiff was limited to a recovery of 75 points, or $3.75 per bale, on the October cotton, as to the 500 bales to be delivered in October. There was ample evidence that the price of cotton of the grade and staple called for by the contract, f. o. b. Oklahoma points, was 150 points or more on New York middling cotton on November 30, 1926. There was also evidence that these prices were matters of record in all cotton exchanges. The difference in market value of the cotton contracted for and the price called for by the contract was easily ascertained. Under the provisions of section 5972, C. O. S. 1921, as construed in Okla. City v. Hoke, 75 Okla. 211, 182 P. 692; Hartford Fire Ins. Co. v. Bernard, 99 Okla. 44, 221 P. 1011; Midland Valley Ry. Co. v. Price, 127 Okla. 106, 260 P. 26; Concordia Ins. Co. v. School Dist., supra, plaintiff was entitled to interest as allowed by the verdict. This does not necessarily conflict with what was said in American Eagle Fire Ins. Co. v. Lively, supra. Interest was allowed there only from the date of the trial because of the nature of the property destroyed and the difficulty in ascertaining the actual or fair value thereof. That difficulty did not exist in the present case.

There was no error in instructing the jury that one hundred (100) points means one cent per pound, or $5 per bale. This was in effect the stipulation of the parties. In the record, the word "pounds" is used where it should have been "points." But the instruction clearly corrects this evident error.

The judgment is affirmed.

CULLISON, V. C. J., and SWINDALL, OSBORN, BUSBY. and WELCH, JJ., concur. ANDREWS, McNEILL, and BAYLESS, JJ., absent.