TRAVELERS FIRE INS. CO. v. RANNEY–DAVIS MERCANTILE CO.

NEW YORK UNDERWRITERS INS. CO. v. RANNEY–DAVIS MERCANTILE CO.

GRAIN DEALERS NAT. MUT. FIRE INS. CO. et al. v. RANNEY–DAVIS MERCANTILE CO.

Nos. 3795–3797.

United States Court of Appeals
Tenth Circuit.

March 25, 1949.

F. A. Rittenhouse, of Oklahoma City, Okl. (Walter D. Hanson, Olive R. Rittenhouse, and John F. Webster, all of Oklahoma City, Okl., and W. D. Jochems, J. Wirth Sargent, and Emmet A. Blaes, all of Wichita, Kan., on the brief), for appellants.

W. L. Cunningham, of Arkansas City, Kan. (A. M. Dean, D. Arthur Walker, Wm. E. Cunningham, and William R. Howard, all of Arkansas City, Kan., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Ranney-Davis Mercantile Company is a Kansas corporation with its principal place of business and head office in Arkansas City, Kansas. It was authorized to do business in Oklahoma. It operated a wholesale grocery and merchandise business carried on in a building owned by it at Woodward, Oklahoma. It took out three separate policies of insurance on the building, fixtures and equipment with each of the appellant insurance companies, insuring against all loss resulting from fire, lightning, wind storms, etc. All three policies were standard form Oklahoma policies and were substantially alike in coverage. All the insurance companies were duly licensed to do business in both Oklahoma and Kansas.

On April 9, 1947, during the coverage period, a tornado partially destroyed the building. Being a partial loss, the 90% co-insurance clause of the policies, under which the Mercantile Company was a co-insurer to the extent that 90% of the value of the building exceeded the insurance in force, applied. A dispute arose between the insured and the companies as to the amount of their liability by virtue of the co-insurance clause. Failing to reach a settlement, the Mercantile Company instituted a suit for $6,000 against the Travelers Fire Insurance Company at Wichita, Kansas, in the United States District Court for the District of Kansas; a second suit for $6,000 in the same court against the New York Underwriters Insurance Company; and a third suit for $12,000 against the Grain Dealers National Fire Insurance Company et al., in the State District Court of Cowley County, Kansas. This last suit was removed to the United States District Court for the District of Kansas, sitting at Wichita, Kansas. There was diversity of citizenship between the Mercantile Company and the three insurance companies.

The three cases were consolidated and were tried to the court with a jury sitting in an advisory capacity. Special questions were submitted to the jury, and based on its answers, judgment was entered August 12, 1948, against the Travelers Fire Insurance Company for $5,036.85; against the New York Underwriters Insurance Company for $5,036.85; and against the Mills Mutuals consisting of the Grain Dealers National Mutual Fire Insurance Company, Pennsylvania Millers Mutual Fire Insurance Company, Millers Mutual Fire Insurance Association, Michigan Millers Mutual Fire Insurance Company, Western Millers Mutual Fire Insurance Company, and The Millers Mutual Fire Insurance Company, for $10,973.70 with interest on such judgment of 6% from October 20, 1947. This appeal followed.

It is urged that the trial court lacked jurisdiction and therefore erred in overruling appellants' motion to quash service of summons. Service was had on the appellants by serving the Commissioner of Insurance as required by Kansas law in case of foreign insurance companies authorized to do business in Kansas.[1]

---

[1] Title 40, Section 218, Kansas Statutes, provides as follows:

"Every insurance company, or fraternal benefit society, on applying for author-

It is appellants' position that under this Kansas Statute, foreign insurance companies authorized to do business in Kansas may be sued in that state and served with summons directed to the Insurance Commissioner only with respect to a cause of action arising by reason of business done in the state. They take the position that since the building was located in Woodward, Oklahoma, and the policies were written by their agents in Woodward, on approved Oklahoma forms, the transactions were Oklahoma transactions and that no business was done in Kansas with respect to these policies. We doubt whether the contention that no business with respect to these policies was transacted in Kansas is well taken under all the facts in this case, but since, in our opinion, it is not decisive of the question, the subject will not be developed further, and for the purpose of this opinion only it may be assumed that the business transacted in connection with these policies was done in Oklahoma.

It will be noted that nowhere in the Kansas Statute relating to an action in the state court is the action limited to business transactions arising in the state. The consent which is required of foreign insurance companies is that actions may be commenced against them. The only limitation is that the action must be filed in the county in which it arose or in which the plaintiff resides. If the controversy, which is but another name for a cause of action, arose in Kansas, whether with respect to a transaction had within or without the state, suit may be filed either in the county in which the cause of action arose or in the county in which the plaintiff resides. This construction seems to be required by the clear language of the statute.

All legislation making foreign corporations amenable to judicial process in the state in which they seek the privilege of doing business is predicated upon the right of the state to protect its citizens in their controversies with such corporations by requiring that the same be adjudicated in the courts of the state rather than compelling its citizens to travel to remote places to litigate such controversies. Judicial decisions upholding such legislation are likewise founded upon the same logic. No sound reason appears why the state should not have power to compel foreign corporations seeking entrance to the state to agree that while engaged in business under such license, the state court should have jurisdiction of all controversies arising between it and the citizens of the state.

The Supreme Court cases cited by appellants do not sustain their contention that the power of a state to compel foreign corporations, licensed in the state, to litigate their controversies with citizens thereof in the state courts is limited to causes of action arising with respect to business transacted in the state.

The question in Old Wayne Mutual Life Association v. McDonough, 204 U.S. 8, 27 S.Ct. 236, 241, 51 L.Ed. 345, was whether an Indiana insurance company which was doing business in Pennsylvania, without having complied with the Pennsylvania statute for service, could be sued in the court of Pennsylvania by a Pennsylvania citizen on a contract of insurance made in Indiana. Applying the doctrine of implied consent, since the insurance company had not specifically consented to the provisions of the statute, the court held that, "While the highest considerations of public policy demand that an insurance corporation, entering a state in defiance of a statute which lawfully prescribes the terms upon which it may exert its powers there, should be held to have assented to such terms as to

ity to transact business in this state, and as a condition precedent to obtaining such authority, shall file in the insurance department its written consent, irrevocable, that actions may be commenced against such company or fraternal benefit society in the proper court of any county in this state in which the cause of action shall arise or in which the plaintiff may reside by the service of process on the commissioner of insurance of this state, and stipulating and agreeing that such service shall be taken and held in all courts to be as valid and binding as if due service had been made upon the president or chief officer of such corporation. Such consent shall be executed by the president and secretary of the company, authenticated by the seal of the corporation, and shall be accompanied by a duly certified copy of the order or resolution of the board of directors, trustees or managers authorizing the president and secretary to execute the same. * * *"

848

business there transacted by it, it would be going very far to imply, and we do not imply, such assent as to business transacted in another state, although citizens of the former state may be interested in such business." In Simon v. Southern Railway Company, 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492, the Supreme Court construed a similar statute of Louisiana applying to railroads and held it did not contemplate suits against foreign corporations authorized to do business in the state with respect to causes of action arising outside the state.[2] In Morris and Company v. Skandinavia Insurance Company, 279 U.S. 405, 49 S.Ct. 360, 73 L. Ed. 762, the Supreme Court construed a similar statute of the state of Mississippi and held that it was limited to controversies growing out of transactions within the state. The Supreme Court called attention to the fact that Mississippi had not construed its statute. In Mitchell Furniture Company v. Selden Breck Construction Company, 257 U.S. 213, 42 S.Ct. 84, 85, 66 L.Ed. 201, the Supreme Court construed a similar Ohio statute and held that it was limited to causes of action arising out of transactions within the state. In none of these cases was the question involved whether a statute could lawfully subject foreign corporations, authorized to do business in the state, to the jurisdictions of its courts with respect to a cause of action arising with citizens of the state, although growing out of transactions carried on outside the state. The opinion of the Supreme Court in the Mitchell Furniture Company case, supra, however, indicates that a statute relating to all causes of action, whether growing out of business transactions within or without the state, would be valid. Thus the court said:

"Of course when a foreign corporation appoints one as required by statute it takes the risk of the construction that will be put upon the statute and the scope of the

agency by the State Court. Pennsylvania Fire Insurance Company v. Gold Issue Mining and Milling Company, 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610. * * * Unless the state law either expressly or by local construction gives to the appointment a larger scope, we should not construe it to extend to suits in respect of business transacted by the foreign corporation elsewhere, at least if begun, as this was, when the long previous appointment of the agent is the only ground for imputing to the defendant an even technical presence."

The Kansas Supreme Court has held that in order to acquire jurisdiction, a cause of action must have arisen in the county in which the suit is instituted or the plaintiff must reside therein.[3] The Kansas cases of Mutual Reserve Fund Life Association v. Boyer, 62 Kan. 31, 61 P. 387, 389, 50 L.R.A. 538; Shearer v. Farmers' Life Insurance Company, 106 Kan. 574, 189 P. 648, and Buchanan v. Iowa State Live Stock Insurance Company, 108 Kan. 520, 196 P. 249, do not require a contrary conclusion. In the Mutual Reserve Fund Life Association case, the application for the life insurance policy was made in Missouri through an agent whose office was in Missouri. The medical examination was held in Missouri and the policy was executed in New York and delivered to the insured in Missouri. The license of the company to do business in Kansas had been revoked nearly two years prior to the institution of the suit and no business had been transacted in Kansas in the meantime. All that the Supreme Court decided in that case was that the consent to be sued in Kansas terminated with the withdrawal of the company from the state on the revocation of the license authorizing it to do business therein, with the possible exception that the citizens of the state might, after such expulsion or withdrawal, sue in the local courts upon the contracts made during the period the

[2] The facts out of which the Simon case arose are as follows: Simon, doing business in New Orleans, Louisiana, purchased a ticket from Selma, Alabama, to Meridian, Mississippi. The injury on which the cause of action was predicated arose on this trip.

[3] See Shearer v. Farmers' Life Insurance Company, 106 Kan. 574, 189 P. 648, 650; German Insurance Company v. First National Bank, 58 Kan. 86, 48 P. 592, 62 Am.St.Rep. 601; State v. International Harvester Co., 79 Kan. 371, 99 P. 603; State ex rel. Mitchell v. Ancient Order of United Workmen, 161 Kan. 437, 168 P.2d 522; Snelling v. National Travelers' Benefit Association, 102 Kan. 227, 169 P. 1144.

company was transacting business therein, although the court did not find it necessary to pass upon that question. The Supreme Court held that there was an issue of fact as to whether any transactions regarding the policy in question were carried on in Kansas, after the company withdrew, so that it could be said it was doing business after it withdrew from the state. The case was sent back for a trial of the issue of fact. Presumably if it could be established that business was carried on after the written consent to be sued had expired by withdrawal from the state, the company would be subject to service of process in Kansas under the doctrine of implied consent, namely, that one who does business in the state, without complying with the statutes authorizing it to do business, by implication consents to be sued as in cases where such corporation is regularly licensed to do business.

In Shearer v. Farmers' Life Insurance Company, 106 Kan. 574, 189 P. 648, 650, jurisdiction was denied because the plaintiff did not reside in Kansas; neither did the cause of action arise therein. Interpreting the Kansas Statute, the Supreme Court said:

"Manifestly therefore, in order for a plaintiff to avail himself of this statute, one of two conditions must exist; either he must be a resident of the state and of the county where the action is brought, or the cause of action must have arisen in the county."

Here there is a clear expression by the court that the existence of either of these two conditions will support the jurisdiction of the court where service of summons is made as provided for in the pertinent statute. We, therefore, conclude that in order to support the jurisdiction of the court under the Kansas Statute, it is sufficient that the action is filed in the county in which it arose or in the county in which the plaintiff is a resident.

A cause of action arises from an invasion of a right or the violation of an obligation or duty.[4] The storm with the resulting damage to the building did not give the Mercantile Company a cause of action against the insurance companies. It brought into fruition its right to demand a payment under the contracts, but its cause of action did not arise until the companies breached their contracts and denied liability for the resulting loss, and the cause of action arose where that breach occurred.

Judge Savage based his order overruling the motion to dismiss for want of jurisdiction on the ground that the cause of action arose in Kansas, while Judge Mellott based his order sustaining the jurisdiction, when attacked in a motion for a new trial, on the ground that the court had jurisdiction even if the cause of action arose outside the state, since the action was filed in the county in which the plaintiff resided. We think both rulings were correct and based on sound conclusions. Where a cause of action arises was treated by the Supreme Court of Kansas in Shearer v. Farmers' Life Insurance Company, 106 Kan. 574, 189 P. 648, 650. There the court said that,

"A cause of action upon a contract does not arise until there has been a breach * * * and it arises where the breach takes place * * *. The only breach of the contract alleged in the petition was the refusal to pay the amount due under it, and this occurred, presumptively at least, at the residence of the plaintiff and not in Wyandotte county. The words 'where the cause of action arose' do not refer to the place where the transactions took place out of which the cause of action grew. That was settled for this jurisdiction in Bruner v. Martin, 76 Kan. 862, 93 P. 165, 14 L.R.A., N.S., 775, 123 Am.St.Rep. 172, 14 Ann.Cas. 39, where the reasons for the decision and the authorities bearing thereon are fully set forth."

In Swift v. Clay et al., 127 Kan. 148, 272 P. 170, the court said that the cause of action arose from the default of the makers to pay the debt at the place and time that was agreed to pay it. Some of the elements in this case bearing on the question where the cause of action arose are that the headquarters and the head office and principal place of business of the

---

[4] Bruner v. Martin, 76 Kan. 862, 93 P. 165, 14 L.R.A.,N.S., 775, 123 Am.St.Rep. 172, 14 Ann.Cas. 39; Howard v. Brown, 172 Okl. 308, 44 P.2d 959; Vinson v. Graham, 10th Cir., 44 F.2d 772.

Ranney-Davis Mercantile Company was in Arkansas City, Kansas, the policies of insurance were kept there, checks in payment of premiums were sent from that place, notices of loss and proofs of loss were made and sent from Arkansas City, all correspondence from the adjusters with respect to this claim was addressed to Ranney-Davis Mercantile Company at Arkansas City. The policy is silent as to where payment of loss is to be made. In light of all the circumstances, we think this case falls within the pronouncement of the court in the Shearer case that the presumption is that payment was to be made at Arkansas City, and that that is where the breach of the obligation to pay occurred. It was that breach which brought into being this cause of action.

It is contended that the judgment of the court on the amount of depreciation to be taken into account in fixing the value of the building is not sustained by the evidence and is contrary to the law and the evidence. The judgment of the court in this respect was based upon the answers of the jury to questions numbered four and five, as follows:

4. Proper depreciation per annum on the reinforced concrete section was 1%;

5. Proper depreciation per annum on the brick and mill construction section was 1%.

Appellants concede that the evidence supports the answer to question numbered four but contend that there is no competent evidence to support the finding that the depreciation on the brick and mill work construction was 1% per annum. C. M. Herriford, an employee of the Mercantile Company for many years, testified as to his intimate knowledge of the structure and character of the building, and on direct examination, testified that in his opinion the building was worth from $51,000 to $52,000 immediately prior to the fire. On cross examination, appellants elicited the testimony from him that the rate of depreciation on both items in question was 1% per annum. Thereafter, in response to questions by the court, he again testified, without objections by appellants, that the rate of depreciation on the items in question

was 1% per annum. Not only was there no objection made to his testimony with regard to depreciation, but, as pointed out, it was first brought out by appellants themselves. The court also, without objections, instructed the jury generally on the element of depreciation and instructed them that in this case some of the witnesses had testified that the proper rate of depreciation to be applied in connection with the concrete basement floors and walls was 1% per annum, while the proper rate of depreciation to be applied to the brick and lumber construction was 1½% per annum; that these estimates were not binding upon the jury, but that it should fix and determine from all the evidence what it found to be the reasonable rate of depreciation to be applied. Then after illustrating the percentage basis, the court continued by stating that the actual measure of depreciation could not be determined precisely and that, as instructed, the jury would present to this question the general knowledge which they possessed as to matters of common knowledge, observation and experience in life, and should consider all of the evidence introduced by both sides touching upon this issue. No objections were taken to these instructions. In fact, when asked if any of the parties had any objections thereto, the response was in the negative by both sides.

 Herriford's testimony was competent. The weight to be accorded thereto was for the jury. Having elicited this testimony and having approved the instructions of the court given the jury as to the consideration which they should give to all the testimony of the question of depreciation, appellants may not in any event predicate error on the receipt of this evidence in this court.

 It is further contended that the trial court should have discharged the jury, as requested by appellants, because of misconduct on the part of counsel for the Mercantile Company in the closing argument. The arguments of counsel were not recorded but the record shows that in the closing argument on behalf of the Mercantile Company, reference was made to the fact that the insurance companies had paid Pendergast $350,000. While the record on

this point is very sketchy, from what was said in the arguments before our court, the intent attempted to be conveyed was that this was in the nature of a bribe. The trial court severely rebuked counsel for the Mercantile Company and instructed the jury not to consider such remarks. Whether misconduct in a trial of a cause of action is of such a nature that a fair or impartial verdict cannot be reached is in the first instance for the trial court's determination. It is vested with a large discretion in determining such a question, and a judgment will not be disturbed on appeal unless a clear abuse of discretion appears.[5]

From the remarks made by the court with regard to this assignment when the motion for a new trial was before it, it appears that the court was of the opinion that counsel for the insurance companies were not entirely free from fault in their arguments and that this remark was in part elicited by such conduct, but the court found that the jury was an intelligent jury and that it was not prejudiced or influenced by these remarks. In view of all of this and the further fact that the answers of the jury on the question of the rate of depreciation to be applied were only advisory and not binding upon the court, we find no reversible error in this respect.

Finally it is contended that the trial court erred in allowing interest prior to the date of judgment. The trial court held that the insurance contracts were Oklahoma contracts and no exception is taken by any of the parties to such ruling. Section 6 of Title 23 O.S.A., provides that,

"Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

■ The effect of this provision is to say that that is certain and definite which by accepted standards of calculation can be made certain. In Concordia Insurance Company v. School District, 282 U.S. 545, 51 S.Ct. 275, 75 L.Ed. 528, the Supreme Court of the United States had under consideration this section, then recorded in the Okla.Stat. as Section 5972, Comp.Okl. Stat.1921. The Supreme Court reviewed a number of Oklahoma decisions dealing with this section and concluded that such decisions were in such confusion that the view of the Oklahoma Supreme Court in respect to the meaning of the Statute could not definitely be determined. However, by its subsequent decisions in Abraham v. Stewart Brothers Cotton Company, Inc., 165 Okl. 73, 24 P.2d 992, and Blackwell Oil and Gas Company v. Mid-Continent Petroleum Corporation, 182 Okl. 588, 79 P.2d 227, the Oklahoma Supreme Court removed any question as to the construction which it placed upon this statute. In the Abraham case, specific reference was made to the statements by the Supreme Court with respect to the uncertainty in the Oklahoma decisions. In the opinion in this case [165 Okl. 73, 24 P.2d 997], the court said that:

"This court had never laid down a definite rule as to the date from which a plaintiff was entitled to recover interest upon an unliquidated claim."
and then in the syllabus of the opinion, laid down the following rule:

"Creditor is entitled to recover interest from day that right vests in him to recover damages certain or capable of being made certain by calculation from matters of record accessible to both parties, except during time debtor is prevented by law or creditor's act from paying debt."

This rule was restated and confirmed in the Blackwell Oil and Gas Company case, supra. This is also the construction our court placed on this section in Hartford Accident and Indemnity Company v. Collins-Dietz-Morris Company, 10 Cir., 80 F. 2d 441.

---

5 Ocean Accident & Guarantee Corporation v. Penick & Ford, 8 Cir., 101 F. 2d 493; Twachtman v. Connelly, 6 Cir., 106 F.2d 501; Maryland Casualty Co. v. Kelly, 4 Cir., 45 F.2d 788. See Maryland Casualty Co. v. Reid, 5 Cir., 76 F.2d 30.

Under the above statute and decisions there can be no question concerning the Mercantile Company's right to interest prior to judgment. True, the amount of damage was in the first instance in dispute, but the policies themselves laid down the rule by which the amount of damage could be measured and definitely ascertained and established with binding effect upon all parties. The policies contained an appraisal clause which, in effect, provided that in the event of a dispute as to the amount of loss, and the parties being unable to agree, either party could demand an appraisal by appraisers selected as provided for therein and that a determination and award by the appraisers should determine the "amount of actual cash value and loss." The insurance companies could not refuse to avail themselves of the right to have the amount of loss determined by the rule laid down in the contracts and thus avoid the impact of the above statute with respect to their liability for interest from the time when the amount of loss could have been determined. No question is raised with respect to the date from which the court awarded interest, if interest prior to the date of judgment was recoverable, and it is, therefore, not necessary to discuss the computations employed by the court in determining the date at which interest attached.

Such cases as Zurich General Accident & Liability Ins. Co. v. Mid-Continent Petroleum Corp., 10 Cir., 43 F.2d 355 (by this court), Hansen and Rowland Inc., v. C. F. Lytle Co., Inc., 9 Cir., 167 F.2d 170, and American Eagle Fire Ins. Co. v. Lively, 142 Okl. 246, 286 P. 797, upon which appellants rely, are not in point. The Zurich case recognized the effect of the above statute but held that the facts in that case established that the damages were unliquidated and uncertain. They were therefore, not capable of ascertainment prior to judgment. The Hansen and Rowland Inc. case arose under the laws of the State of Washington. In the American Eagle Fire Ins. Co. case, the Oklahoma Supreme Court held that under the facts of that case damages were unliquidated because they could not be readily or accurately ascertained.

Affirmed.