MIDLAND VALLEY RAILROAD CO. v. PRICE.

No. 17687. Opinion Filed Oct. 11, 1927.

(Syllabus.)

1. Appeal and Error—Necessity for Assignment of Errors.

The Supreme Court will not review an alleged error unless the error complained of is assigned as such by the petition in error.

2. Trial—Instructed Verdict for Defendant —Failure of Plaintiff's Evidence.

Where there is no evidence from which the damages claimed by plaintiff can be ascertained, it is the duty of the trial court to instruct the jury to return a verdict for the defendant when properly requested so to do.

3. Carriers—Delivering Carrier of Live Stock—Duty to Provide Adequate Pens.

It is the duty of a delivering carrier of live stock to provide adequate receiving pens to take care of shipments of cattle in such sizes as is usual at that particular point, or such as may be reasonably anticipated from the general volume of business handled at such point.

4. Same—Liability for Damages to Cattle Suffered in Overcrowded Pen.

Where the evidence shows that the defendant, a common carrier for hire, tendered for delivery a shipment of 507 head of four and five year old steers about midnight on a dark night; that the only receiving pens available for receiving said steers was a pen 50 ft. x 84 ft., located in a densely wooded country; that a great deal of cattle were ordinarily shipped to and from said point; that several shipments of cattle as large as the one in question, and at least one larger, had been received at said point; that an additional wire pen had been maintained by said carrier as a receiving pen for sometime, but had been permitted to become torn down; and that said shipment of steers was placed in said receiving pen, and by reason of being overcrowded, 22 head were trampled to death; such evidence is sufficient upon which to submit to a jury the question of negligence of the carrier in not providing adequate facilities for receiving such shipments of live stock. A verdict based upon such evidence will not be disturbed on appeal.

5. Appeal and Error—Omission of Special Defenses in Instructions—Duty to Request Additional Instructions.

Where the instructions of the court do not cover special theories or defenses raised in the trial of the cause, counsel is bound to call the court's attention to the omission by an appropriate request for additional instructions, or he will be precluded from making such failure available as reversible error.

6. Instructions Approved.

Instructions examined, and held to properly state the law of the case.

7. Requested Instructions Properly Refused.

Requested instructions examined, and held erroneous; and that the court's refusal to give such instructions does not constitute error.

**8. Same—Sufficiency of General Charge.**

Requested instructions examined, and held, to have been substantially covered by the general charge.

**9. Damages—Recovery for Negligent Death of Live Stock—Interest Allowable Prior to Judgment.**

In an action for the death of 22 head of steers alleged to have been caused by the negligence of a common carrier, and for expenses incurred in the burial and disposition of said steers, and the damages for the loss of the steers are based upon the market value, interest may be recovered prior to judgment under sections 5972 and 5973, C. O. S. 1921.

Commissioners' Opinion, Division No. 2.

Error from District Court, Jefferson County; M. W. Pugh, Judge.

Action by Henry Price against the Midland Valley Railroad Company et al., for damages to a shipment of steers. Judgment for plaintiff and against the railroad company, and it appeals. Reversed.

O. E. Swan and James D. Gibson, for plaintiff in error.

Green & Pruet, for defendant in error.

· JEFFREY, C. The parties to this appeal occupied the reverse order in the trial court, and will be here referred to as they appeared there This was an action by plaintiff against the Chicago, Rock Island & Gulf Railway Company, Chicago, Rock Island & Pacific Railway Company, St. Louis & San Francisco Railway Company, and the Midland Valley Railroad Company, in the district court of Jefferson county, Okla., for damages done to a shipment of steers. The items of damages are claimed in four separate causes of actions, and are: First, for shrinkage on 507 head at 50c per head, caused by negligent delay in transit; second, for the death of 22 head at $70 per head; third, for bruises, scars, scratches, and other injuries to 485 head at $2 per head; and fourth, $40 expended in the burial and disposition of the dead steers. Plaintiff loaded the steers at Jacksboro, Tex., in the afternoon of April 22, 1924, and consigned the same to himself at Avant, Okla. The Chicago, Rock Island & Gulf Railway Company was the initial carrier; the Chicago, Rock Island & Pacific, and the St. Louis & San Francisco Railway Company were connecting carriers, and the Midland Valley Railroad Company was the terminal or destination carrier. The shipment consisted of 507 head of four and five year old stocker steers loaded in 17 cars. The shipment was made pursuant to the usual live stock contract, which provided, among other things, that the carrier in possession of said steers should not be liable for any loss or damage thereto by reason of the inherent vice, weakness, natural propensity of the animals, or the acts or default of the shipper. Said contract further provided that no carrier should be liable on account of any injury or death sustained by said live stock occasioned by overloading, crowding one upon another, escaping from cars, kicking or goring, or otherwise injuring themselves or each other. Said contract further provided that the shipper, at his own risk and expense, should load and unload the live stock, except where it became obligatory upon the carrier by reason of statute, or such duty is assumed by lawful tariff provision; that the carrier would not be bound to deliver said live stock in time for any particular market, or otherwise than with reasonable dispatch. At the instance of plaintiff, one W. J. Woods accompanied said shipment of steers as caretaker from the point of shipment to Avant, Okla.

Demurrer on behalf of the Chicago, Rock Island & Pacific Railway Company and the St. Louis & San Francisco Railway Company to plaintiff's petition were sustained, and the cause was then dismissed as to each of these defendants. The case was tried to a jury and verdict was rendered in favor of plaintiff and against the defendant Midland Valley Railway Company, for the sum of $2,792.50, with interest at the rate of 6 per cent. from April 23, 1924. Judgment was duly rendered on said verdict, and the defendant appealed from the judgment upon numerous assignments of error, which are discussed in the brief under 15 propositions, or groups of specifications.

Defendant first complains that the court erred in overruling its demurrer to plaintiff's first amended petition. This error, if such, is not assigned as error in the petition in error, and will not be considered. The Supreme Court will not review an alleged error unless the error complained of is assigned by the petition in error. Southwestern Cotton Seed Oil Co. v. Bank of Stroud, 12 Okla. 168, 70 Pac. 205; Lookabaugh v. Epperson, 28 Okla. 472, 114 Pac. 738.

It is next urged that the court erred in overruling the demurrer to the evidence, and refusing to instruct the jury to return a verdict for defendant. No separate demurrer was interposed to the evidence offered in support of each separate cause of

action, but the court, at the close of all the evidence, was requested, by separate written instructions, to instruct the jury to return a verdict in favor of the defendant Midland Valley Railroad Company, on each separate cause of action set forth in said petition.

The first cause of action was for damage to the shipment of steers by reason of shrinkage occasioned by the negligent delay in the shipment. The petition complained of no damage prior to the delivery of the shipment to the defendant company at or near Tulsa but, on the contrary, alleged that there was no delay up to that point. By plaintiff's proof he undertook to show that such delays, as occurred, were after delivery to the destination carrier. The evidence in support of the first cause of action is substantially as follows: That the steers were loaded in Jacksboro. Tex., in the afternoon of April 22, 1924, and consigned by plaintiff to himself at Avant, Okla.; that he placed in charge of said shipment, W. J. Woods, who accompanied the steers to their destination; that he authorized Henry Vaden by telegrams to receive said cattle upon their arrival pursuant to a former arrangement, whereby Vaden had contracted to graze said cattle during the summer months. The evidence shows that the shipment arrived by way of the St. Louis & San Francisco Railway Company at Tulsa, about 2 p. m. April 23rd; that Woods, the attendant, left the train for the purpose of getting his lunch, and that the train moved out and left him in Tulsa; that upon inquiry he was told by a brakeman that the stock train had gone to Lefeber, the connecting point, where the shipment of steers would be delivered to defendant. Woods arrived at Lefeber, according to his estimate of the time, at 4 o'clock p. m. and testified that he was told that the tracks upon which the stock cars were setting were the defendant company's tracks. He further testified that the train remained there until almost night when it pulled out for Avant; that it passed through Avant about 8:30. and set the Price steers out at Nichol's Switch several miles beyond Avant; that another train came and picked up the shipment, and returned the same to the stock yards at Mile Post 181, where the steers were to be unloaded at about 11 p. m. There was no siding at Mile Post 181, and the steers were unloaded from the main track, which required three hours and 20 minutes. With reference to the measure of damage by reason of shrinkage, the evidence is very unsatisfactory and uncertain.

The evidence is that the steers were worth about $70 per head at the time of shipment, and that they would average about 950 pounds apiece, and that a delay of 11 or 12 hours would amount to a considerable loss, but a delay of two hours would not amount to much damage. This was the testimony of plaintiff. Mr. Johnson said that he would guess that the steers would lose in weight 75 to 100 pounds per head. It is apparent that he was guessing at the loss upon the entire trip. When he was asked to estimate the shrinkage from the time that the steers were received by the defendant, he answered that he did not know what the shrinkage would be. Under this state of the record, we are of the opinion that there was no competent evidence upon which the question of shrinkage should have been submitted to the jury. and no competent evidence upon which the jury could intelligently arrive at a verdict in favor of plaintiff on this item of damage, but that the verdict as to this cause of action was based solely on conjecture. As was said in Berry v. Chester et al., 23 Okla. 340, 100 Pac. 519, where a party claims compensation for an injury sustained, he must show, not only that he has suffered loss on account of such injury, but also the amount of it. It was then the duty of the trial court to have instructed the jury to return a verdict for the defendant on the first cause of action when requested so to do. Kansas City Southern Ry. Co. v. Langley, 62 Okla. 49, 160 Pac. 451; Spaulding Mfg. Co. v. Holiday, 32 Okla. 823, 124 Pac. 35.

It may be that the errors appearing in the record will not necessitate a new trial, and for that reason, we shall consider all of defendant's specifications of error in the order in which they are presented.

The same complaint goes to the refusal of the court to instruct a verdict in favor of the defendant on each of the causes of action. The second and third causes of action are based upon injuries received while confined in the stock pens at the point of delivery. The evidence in support of the third cause of action is, that most of the remaining 485 head were injured in some manner, while crowded in the small stockpen; that the steers were placed at this stockpen on the main track at 11 o'clock at night; that the stockpen was located in a dense wooded country, and that the night was very dark; that the only receiving pen available for the Price steers was 50 ft. x 84 ft.; and the evidence is further that this size pen would only accommodate from

250 to 350 steers of this size; that by reason of being crowded in this manner the steers trampled on each other, gored and crushed each other, caused scratches. scars, broken horns and bones, and were damaged so that they did not fatten readily for the market. The only evidence as to the measure of damage was that of the plaintiff, himself, who testified that he was not present at the time the steers were delivered and did not see them until in July of that year. He further testified over objection of defendant that the steers were sold in September of that year, and that 27 or 28 head brought only $1.25, while the other steers in good condition sold for $8.25. Plaintiff further testified that some of them were so crippled and bruised that they would never have recovered so as to sell well on the market. Considering that defendant was liable for the injury to the steers, the measure of damages in such cases is the difference between their market value in the condition in which they should have been delivered and the condition in which they were actually received. at the time and place of delivery. In the absence of a market value at the destination of the shipment, then the difference between the intrinsic value of the steers in the condition in which they should have been delivered and the condition in which they were delivered constitutes the measure of damage. We know of no other rule in cases of this character for a correct determination of damages claimed. Midland Valley Ry. Co. v. Ezell, 36 Okla. 517, 129 Pac. 734; Davis v. Kelly, 96 Okla. 17, 219 Pac. 923; Midland Val. Ry. Co. v. Larson, 41 Okla. 360, 138 Pac. 173; Gulf, C. & S. F. Ry. Co. v. Gillespie & Carlton, 54 Tex. Civ. App. 593, 118 S. W. 628; H. & T. C. R. Co. v. Lindsey (Tex. Civ. App.) 175 S. W. 708; Lowe v. Davis (W. Va.) 119 S. E. 477; Lancaster v. Daggett (Tex. Civ. App.) 272 S. W. 340. Upon the evidence offered, the jury could not have intelligently arrived at a verdict as to the amount of damage on this item. Under this state of facts the court should have instructed a verdict in favor of the defendant when requested so to do.

The second cause of action is for the death of 22 head of steers which were trampled to death in the receiving pen because of being overcrowded, and the fourth cause of action is for the expense in burying the dead steers. The evidence in support of these causes of action, in addition to that stated above. is that the steers were loaded in the afternoon of April 22nd, and that they passed through Avant about 8:30 at night, and were returned to the receiving pens at 11 o'clock that night; that they were retained in the pens from the time they were unloaded at 2:20 a. m. till 4:10 a. m., at which time the plaintiff's agents undertook to remove them and found that 22 head of the steers had been crowded down and trampled to death, or died very shortly thereafter. Two or three experienced cattlemen testified that it was not practical to undertake to herd the restless, hungry steers in the brush on such a dark night, and that they moved them just as soon as it began to break day. They also testified that the pen in which they were placed, and the only one available. was entirely too small, and that the death of the steers was caused from overcrowding in the small pen.

Defendant insists that if the steers were injured as claimed by plaintiff while in the receiving pens, such injury occurred after they had been delivered by defendant, and that defendant is not liable in damages therefor. As we view it, it does not matter whether there had been a technical delivery or not. Counsel for defendant admits that it is the duty of a delivering carrier to provide adequate facilities sufficient to take care of shipments of cattle usually handled at that particular place, and that the carrier must anticipate the conditions arising from the general volume of such business at that point. and be ready to meet them by adequate equipment. However, it is contended that the carrier is under no duty to provide pens for extremely large shipments such as would be unusual at the particular point, and not anticipated from past experience. We are inclined to agree with counsel's position on this question. This is the rule laid down in 4 Elliott on Railroads (3rd. Ed ) sec. 2345. See, also. Casey v. St. L. & S. W. Ry. Co. (Tex. Civ. App.) 83 S. W. 20; 10 C. J. 81 and 104. However, the evidence shows that a great deal of live stock is shipped to and from this particular point, and the witness, Vaden, testified to several shipments of the size of this one and larger. He stated that he had unloaded 50 carloads of cattle at that point, but had received them in the daytime, and that it was unnecessary to confine them in the pen. He also testified that only a short time before he received a shipment of 560 head at night; that this shipment consisted of small animals, but that the pen was entirely too small for that shipment. The evidence further shows that there had been a large wire pen designated as an overflow pen at this point, but that defendant had permitted the same to become torn down and useless, and

that the facilities for shipping and receiving live stock had been insufficient for sometime. Plaintiff testified that the overflow pen was in use when he shipped cattle to that point in 1923. All of these facts indicate that there was need for larger receiving pens, and it was at least some evidence of negligence on behalf of defendant in failing to provide such a need. Under the evidence in this case, what was plaintiff to do with his steers? The steers had already been in the cars about 30 hours, and in order to get them unloaded he had to accept the best that the defendant offered him, and use the pen for a short time. The law does not require that under conditions of that kind the shipper refuse to receive the cattle, but, on the contrary, it would seem that it was his duty to receive them and minimize the loss as much as possible. Especially does this reasoning appeal to this court when under the evidence it appeared that plaintiff had no alternative unless he should elect a course which, in the light of common experience, promised a greater disaster than that offered by the defendant.

Some objection is raised to the character of evidence fixing the measure of damage for the loss of 22 head of steers. Plaintiff testified that he knew the market value of the steers, and that they were worth at that time $70. It later developed that he was basing his testimony principally upon the market at Ft. Worth, Tex., only a few days before the steers were killed. This was perhaps objectionable for the reason that the market value at the time and place of the damage is the correct measure However, defendant made no objection to this evidence, but brought out a great deal of it on cross-examination. There was no contest whatever as to the market value of the steers killed, and it will therefore be presumed that defendant waived any objection that he might have had, and regarded the value given as also the value at the time and place the steers were killed. The evidence in support of the fourth cause of action is that defendant refused to dispose of the dead steers, and the families living near the stockpens complained of the offensive odor, and that it became necessary for plaintiff to hire someone to dispose of the carcasses, and paid $40 for this service.

The evidence in support of the second and fourth causes of action was ample to require the submission of these questions to the jury, and there being such evidence, as above pointed out, the verdict of the jury

as to these items of damage will not be disturbed on appeal.

The next specification of error, that the verdict is not sustained by sufficient evidence, has been hereinabove disposed of.

It is next urged that the court committed error in giving to the jury instruction No. 14, which is as follows:

"Gentlemen of the jury, you are instructed that it is the duty of a common carrier to deliver property to the consignee at the place to which it is consigned in the manner usual at that place, and when goods have reached their destination it is the duty of the common carrier to deliver them at a safe place and with reasonable facilities to receive the same and a reasonable time for the consignee to receive the same, and if you find that the carrier failed to do so such failure would constitute negligence."

It is insisted by counsel for defendant that the instruction imposed upon the defendant the duty of furnishing pens large enough to accommodate the largest possible shipment at that point. It is sufficient to say that this instruction states the general law on that point. It appears that the question of the shipment of cattle being unusually large for that point, and that the defendant could not have anticipated the condition that would arise from the general volume of such business at that point, was a special theory or defense raised by defendant in the course of the trial, if at all. Where the instructions of the court do not cover all phases of the case, such as may arise in the trial of the case, counsel is bound to call the court's attention to the omission by an appropriate request for additional instructions, or he will be precluded from making such failure available as reversible error. Central Petroleum Co. v. Lewis, 98 Okla. 26, 224 Pac. 186; Heindselman v. Harper, 91 Okla. 50, 215 Pac. 771. No special instruction was requested on this question. Complaint is also made that the instruction places upon the defendant the duty of delivering the shipment at a reasonable time for the consignee to receive the same. It is claimed that that instruction is in conflict with one provision of the live stock shipping contract, which is as follows:

"No carrier is bound to transport said live stock by any particular train or vessel, or in time for any particular market or otherwise than with reasonable dispatch."

Instruction No. 12 given to the jury takes care of that portion of the contract, and is as follows:

"You are instructed that there was no

requirement on the part of the defendant to deliver the cattle in question at destination at any particular hour of the day or night, or otherwise, than with reasonable care and dispatch."

We do not think that that part of the contract, nor instruction No. 12, should be so interpreted as to authorize defendant to force delivery upon plaintiff, regardless of conditions that might arise, and especially such conditions as might be brought about by the defendant. Conditions may arise even in the daytime that would make a delivery at that particular time unreasonable. And certainly defendant should not be heard to complain of a rule that required it to do that only which is reasonable in the light of all the facts and circumstances. It was not error to give this instruction.

The giving of instruction No. 17 is assigned as error. Instruction No. 17 prescribes the measure of damage for each cause of action. In view of what has heretofore been said upon the second specification of error, it will not be necessary to consider this specification of error, since all questions raised herein were disposed of there.

The next specification of error complains of the giving of instruction No. 15, which deals with damages which might have been considered as a result of the carelessness and negligence of the defendants in the transportation and unloading of said cattle. Since that part of the verdict awarding damages for shrinkage en route, and injuries to the steers which survived, cannot be sustained, it is not necessary to consider this specification of error.

Defendant next complains that the court erred in refusing to give to the jury its requested instruction No. 7, which is as follows:

"As to the second cause of action to recover damages on account of the death of the cattle claimed to have died in the pens at destination, you are instructed that if you find that the animals died as a result of injuries sustained after they are unloaded in the pens at destination, then your verdict must be for the defendants."

This instruction does not state the law as indicated heretofore. To have given such an instruction would have been taking from the jury the question of negligence in furnishing adequate facilities on the part of defendant for receiving of shipments of cattle at this point.

The refusal to give requested instruction No. 8 is assigned as error. Requested instruction No. 8 is as follows:

"You are instructed that if you find that the plaintiff or his agents or employees at the time and place in question knew of the size of the pens into which said cattle were unloaded therein, and that such pens were insufficient in size, then it was their duty to remove said cattle or a sufficient number theerof from the pens promptly so as to prevent damage by overcrowding."

This instruction does not state the law as applicable to the evidence in the case As we have heretofore said, it appears from the evidence that under the circumstances plaintiff adopted the course that appeared to be most reasonable, and would less likely result in loss to him. By instruction No. 6, the jury was told that if they should find from the evidence that if plaintiff, or any of his representatives, could have prevented any of the damages complained of by the exercise of ordinary care, it was their duty to do so, and for any damage which might have been so prevented the defendant could not be held liable. By instruction No. 7, the court instructed the jury that if they should find from the evidence that after the cattle in question were unloaded in the pens at destination, the shipper had failed to exercise ordinary care to guard or protect said animals. and that as a result thereof damages were sustained, there could be no recovery for any such damages. These instructions amply cover the law as applicable to the evidence on this particular question.

The refusal to give requested instruction No. 9 is assigned as error. Requested instruction No. 9 is as follows:

"You are instructed that the defendants are not liable in this case for any damages sustained by said cattle after they were unloaded at destination. You are instructed that it was the duty of the plaintiff to unload his cattle from the cars at destination, and the defendants are not liable for any damages caused in unloading or thereafter."

Since this instruction is in effect the same as requested instruction No. 7, heretofore disposed of, except that it sought to instruct that it was the duty of plaintiff to unload the cattle at destination, and since the verdict of the jury can only be sustained as to the items of damage which occurred, after the steers were unloaded and placed in the receiving pen we will not give any further consideration to the assignment.

The refusal to give requested instruction No. 11 is assigned as error. Requested instruction No. 11 is as follows:

"The defendants in this case are not liable for any injuries sustained by any of said

cattle as the result of crowding one upon another or from fright or any inherent vice of the animals."

Had this instruction been limited to the time while the steers were in the stock cars, it would have been proper, as this was one of the provisions of the shipping contract. But it would not be proper to give the instruction in its present form since the contract did not provide that defendant would not be liable for injuries received as result of crowding one upon another while in the receiving pen. In fact, if such a provision had been in the contract, it would not avail defendant anything, for the reason that it could not contract away any liability which might arise by reason of its own negligence.

The refusal to give requested instruction No. 15 is assigned as error. Said instruction is as follows:

"If you find that the loss and damage to the cattle was caused by an inherent vice, weakness or natural propensity of the animals; or the injury or death sustained by said live stock was occasioned by overloading, crowding one upon another, kicking, goring, or from fright; then you are instructed that the shipping contract relieved the defendants from liability for such injuries, and your verdict will be for the defendant."

As has just been pointed out with reference to requested instruction No. 11, this instruction does not state the law of the case. The law pertaining to injuries received from inherent vice, kicking, goring, trampling or pushing each other, is correctly covered by instruction No. 9 of the general charge. The shipping contract provides that defendant shall not be liable for damages resulting from these causes, but as to overloading and crowding one upon another only while loaded in the stock cars.

It is next complained that the trial court erred in refusing to give requested instruction No. 16. That instruction is as follows:

"If you find from the evidence that the plaintiff, through his agents, was familiar with the size and conditions of the pens and that that number would overcrowd the pens, and yet undertook to unload the cattle into the pens; then you are instructed that if such acts of the plaintiff in so doing contributed to and were the proximate cause of the injuries sustained by the cattle, no recovery can be had on these issues of this action."

The first part of this instruction as heretofore pointed out is incorrect, and instructions Nos. 6 and 7 given the jury amply cover the matters contained in the latter part of the instruction.

The refusal to give requested instruction No. 21 is assigned as error. Requested instruction No. 21 is as follows:

"If you find from the evidence that after the cattle in question were unloaded at destination the shipper or his representatives left the cattle in said pens and themselves left the pens with no one to guard or care for the cattle, you will consider these facts in determining whether or not the plaintiff was guilty of negligence contributing to the damages complained of, and if you find he was guilty of such negligence, then your verdict must be for the defendant as to such damages."

Instruction No. 7 given by the court instructed the jury that if they should find from the evidence that after the cattle in question were unloaded in the pens at destination, the shipper failed to exercise ordinary care to guard or protect said animals, and as a result thereof damages were sustained, there could be no recovery for any such damages. This instruction is sufficient on this question, and it was no error to refuse requested instruction No. 21.

The next and last question presented by this appeal is that the damages awarded plaintiff are excessive, in that the verdict of the jury awarded interest on the amount of the verdict from the 23rd day of April, 1924. On this question, the authorities are not in accord. The original cases on the subject make a distinction between unliquidated claims, which may be determined by fixed standards, such as current wages for repairing damages to property, the value of materials to replace destroyed property, and the like; and unliquidated claims, which may not be determined entirely by fixed standards, but which must be left to the sound judgment and discretion of the jury, or the court in the absence of the jury. In the former case, interest is allowable, while in the later it is not. The reason for the rule is that in the latter case the person against whom the claim is made cannot ascertain the amount chargeable against him until the same has been judicially determined. In the case of Schaff v. Hudgins, 96 Okla. 173 221 Pac. 90, the action was for damages to a shipment of cattle, where a portion of them were killed and others were injured as in this case. A general verdict for a lump sum was returned, and it was held that interest on such sum prior to date of judgment was not allowable. To the same effect is St. Paul Fire & Marine Ins. Co. of St. Paul, Minn., v. Robinson, 72 Okla.

269, 180 Pac. 702, and City of Chickasha v. Hollingsworth, 56 Okla. 341, 155 Pac. 859. Section 5972, C. O. S. 1921, is as follows:

"Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to re-cover which is vested in him upon a par-ticular day, is entitled also to recover in-terest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

Section 5973, C. O. S. 1921, is as follows:

"In an action for the breach of an ob-ligation not arising from contract, and in every case of oppression, fraud or malice, interest may be given in the discretion of the jury."

This court, in the case of Oklahoma City v. Hoke, 75 Okla. 211, 182 Pac. 692, the same being an action to recover damages against the city for destruction of crops, held that interest might be recovered prior to the date of judgment on the amount found due plaintiff. Were we to permit the judgment of the trial court to stand as to all items of damages, we would likely be governed by the holding in Schaff v. Hud-gins, supra. But since the verdict of the jury can only be sustained as to the loss of the 22 head of steers killed, and the amount expended in burying said steers, it would seem that one of these items being fixed and the other determinable by a fixed standard, there is no sound reason why in-terest could not be recovered prior to date of judgment, in view of the foregoing rules and statutes above quoted. In view of the fact that the verdict as to the first and third causes of action is unsupported by evidence and is based upon conjecture, the same cannot be upheld, and it follows that the cause must be reversed. But since there was no dispute as to the value of the 22 head of steers killed, their value being placed at $70 per head, nor any dispute as to the expenditure of $40 for the burial and dispo-sition of the dead steers, and the evidence being sufficient on these two items to war-rant the court in submitting the same to the jury, the judgment of the trial court can and should be so modified as to allow said judgment to stand on these two items, if plaintiff will enter a voluntary remittitur of $1,212.50. Berry v. Chester, 23 Okla. 340, 100 Pac. 519.

We are therefore of the opinion, and it is so ordered, that the judgment of the trial court be reversed and remanded with directions to enter judgment in favor of plaintiff for $1,580 with interest at 6 per

cent. from April 23, 1924, if he will enter a voluntary remittitur of $1,212.50 within 30 days from the date this opinion becomes final, otherwise to grant a new trial.

BENNETT, HERR, DIFFENDAFFER, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 3 C. J. p. 1330, §1462; 2 R. C. L. p. 171. (2) 17 C. J. p. 1059, §361; 38 Cyc. pp. 1579, 1580; 26 R. C. L. p. 1078; 3 R. C. L. Supp. p. 1491; 4 R. C. L. Supp. p. 1696; 5 R. C. L. Supp. p. 1438; 6 R. C. L. Supp. p. 1582. (3) 10 C. J. p. 79, §81; p. 81, §82; p. 104, §121; anno. L. R. A. 1918C, 539; 15 A. L. R. 200; 4 R. C. L. p. 969; 1 R. C. L. Supp. 1247; 4 R. C. L. Supp. p. 301. (4) 4 C. J. p. 852, §2834; 10 C. J. p. 389, §600; pp. 391, 392, §601; 14 R. C. L. p. 971; 1 R. C. L. Supp. p. 1248; 4 R. C. L. Supp. p. 301. (5) 4 C. J. p. 854, §756; 38 Cyc. p. 1695; 14 R. C. L. p. 195; 3 R. C. L. Supp. p. 287; 4 R. C. L. Supp. p. 920; 5 R. C. L. Supp. p. 779. (6) 10 C. J. p. 393 §603. (7) 38 Cyc. p. 1707; 14 R. C. L. p. 801; 3 R. C. L. Supp. p. 290; 5 R. C. L. Supp. p. 779; 6 R. C. L. Supp. p. 833. (8) 38 Cyc. p. 1711. (9) 10 C. J. p. 400, §613; 17 C. J. p. 825, §146; 8 R. C. L. p. 536; 2 R. C. L. Supp. p. 625: 4 R. C. L. Supp. p. 561.