## DEARDORF et al. v. ROSENBUSCH.

No. 33571.   May 31, 1949.

*206 P. 2d 996.*

Robinson, Shipp & Robertson, of Oklahoma City, for plaintiffs in error.

Suits & Fellers and Charles N. Berry, Jr., all of Oklahoma City, for defendant in error.

GIBSON, J.  Karl W. Reynolds, holder of the record title to an 1/160 mineral interest in the northeast quarter of section 9, township 14 north, range 4 west, Oklahoma county, instituted action against Louise A. Rosenbusch, his remote grantor, to quiet title thereto. Upon motion of defendant Louise A. Rosenbusch, H. L. Burkhart, her immediate grantee, and B. C. Deardorf, husband of said grantee, were made parties. By cross-petition Rosenbusch sought judgment against Deardorf and Burkhart for the reasonable value of said mineral interest, alleging that the conveyance thereof was obtained by fraud.  Upon trial the court found for cross-petitioner, assessed the value of such interest at the time of the conveyance, December 30, 1945, to be $700, and awarded judgment therefor with interest at 6% from said date.  To reverse that judgment this appeal is taken. Two grounds of error are urged: (1) the court erred in holding that the deed was obtained by fraud, and (2) the court erred in the allowance of interest.  For convenience Louise A. Rosenbusch will be referred to as plaintiff, and B. C. Deardorf and H. L. Burkhart as defendants.

The plaintiff resided in Washington, D. C., and for many years had been an employee of the Federal Government in the National Gallery of Art under the Smithsonian Institute, and was without knowledge of the oil business.  In 1934 she purchased as an investment the one acre mineral interest from Potomac Trading Corporation for a cash consideration of $350.  The property was undeveloped at that time and

she was not advised of the later development thereon until after executing the conveyance in question. The conveyance was obtained on solicitation of defendant Deardorf. At the time of the negotiations there was upon the premises one producing well, and two others were being drilled. The price paid for the conveyance was the sum of $10.

The negotiations were conducted by correspondence. The initial letter written to plaintiff was written upon paper bearing the letterhead "Title Service Company" and the communication was signed "B. C. Deardorf, Manager." Therein attention is called to the fact that during 1934 the addressee acquired a nonproducing royalty interest; that a client of the writer was attempting to clear up the title to the farm and had authorized the writer to pay to the addressee the sum of $10 for a quitclaim deed to the one acre mineral interest. There was enclosed a quitclaim deed and sight draft for $10 upon writer to be returned with the executed deed to an Oklahoma City bank for collection on delivery of deed. Through misunderstanding the draft was returned without the deed, and the draft was dishonored. Immediately thereafter defendant wrote plaintiff explaining the dishonor and enclosed therein another draft to be used on transmission of the executed deed. It was suggested in the letter that if it were preferred the deed could be sent directly to the writer who, on receipt, would send cashier's check for the $10. Plaintiff replied, enclosing the quitclaim signed and acknowledged, and therein stated:

" . . . The sum, $10.00, seems rather small, which you offer, for the $350.00 I paid in 1934 to H. Lamar Henderson of this city (acting for the Potomac Trading Company). Am returning your draft — would rather have check, please!

"Many apologies are due you and Mr. Johnson for the delay and mixup in this matter. I have been loth to relinquish for so little, that which cost me

so much; but as I am nearing my eightieth year there can be little time to benefit from any returns. Do you wish to have any other of the papers—such as the Recorded Deed, etc.? I suppose this loss of $350.00 minus $10.00 may be deducted from my 1944 income tax?"

The name of the grantee did not appear in the deed when executed by plaintiff, and was thereafter inserted by defendant.

In urging the first ground of error it is recognized that there were misstatements of fact but it is contended that they were not material. And it is recognized that plaintiff was without knowledge of the producing oil wells upon the property, but defendants contend "that they said nothing to mislead her and that she made the sale of her own free will and accord in an arm's length transaction."

In the opinion of this court, to confirm as true another's false impression concerning a material fact is no less a false representation of such fact than if made directly in order to create the false impression. The fact that there was production was the moving cause of defendant's seeking the conveyance. The absence of plaintiff's knowledge of the production was relied on as an inducement to plaintiff's executing the conveyance for a nominal consideration. There is no need to weigh the value of each of the several statements in the letter when it is manifest that the letter as a whole is expressive of a scheme to capitalize on the ignorance of another.

In Berry et ux. v. Stevens et al., 168 Okla. 124, 31 P. 2d 950, we said:

"Though one may be under no duty to speak, if he undertakes to do so, he must tell the truth, and not suppress facts within his knowledge or materially qualify those stated."

Such duty arose when defendant began the negotiations. And on disclosing in part the pertinent facts such duty would be breached by withholding other pertinent truths. In the Berry case

we quoted with approval the following from 26 C. J. 1074, sec. 17:

" . . . 'A duty to speak may arise from partial disclosure, the speaker being under a duty to say nothing or to tell the whole truth. One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it goes, since such concealment is in effect a false representation that what is disclosed is the whole truth.' "

Instead of disclosing the truth of there being production the same was sought to be concealed from the plaintiff by indirectly if not directly creating the belief if it did not exist, or confirming as true, if it did exist, plaintiff's belief that the land was nonproductive. The holding of the trial court that the deed was obtained by fraud finds full support in the evidence.

As basis for the alleged error of the court in allowing interest, it is contended by defendants that the question is controlled by Tit. 23 O. S. 1941 §6, as follows:

"Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

American Eagle Fire Ins. Co. v. Lively, 142 Okla. 246, 286 P. 797, is relied on as giving the applicable construction of that statute in the following words:

"Interest cannot be recovered upon unliquidated damages, where it is necessary for a judgment or verdict to be had in order to ascertain the amount of the same."

Plaintiff contends that the controlling statute is section 7 of the same title, which provides:

"In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud or malice, interest may be given in the discretion of the jury."

Midland Valley Railroad Co. v. Price, 127 Okla. 106, 260 P. 26, is relied on as affording the applicable construction in the syllabus, as follows:

"In an action for the death of 22 head of steers alleged to have been caused by the negligence of a common carrier, and for expenses incurred in the burial and disposition of said steers, and the damages for the loss of the steers are based upon the market value, interest may be recovered prior to judgment under sections 5972 and 5973, C. O. S. 1921."

While the quoted holding in the American Eagle Fire Insurance Company case is correct as an abstract statement of the law, it has no application herein. Involved there was liability arising under an insurance contract. It was there held that the matter of interest was governed by section 6 and the quoted statement was made as the applicable construction thereof. We had occasion to review that holding in the recent case of Fidelity-Phenix Fire Insurance Co. v. Board of Ed. of the Town of Rosedale et al., 201 Okla. 250, 204 P. 2d 982. We there held that section 22 of that title and not section 6 governed, and overruled the holding in the American Eagle Fire Insurance Company case.

In the instant case neither of said sections 6 and 7 is to be considered to the exclusion of the other. St. Louis-San Francisco Ry. Co. v. Clark, 104 Okla. 24, 229 P. 779, 782, was an action in tort to recover damages for personal injuries. By reason of the action being in tort the trial court considered section 5973, C.O.S. 1921 (same as section 7) as controlling and instructed the jury that the question of interest rested in its discretion. On appeal the court held that section 5973 should be considered with section 5972, C.O.S. 1921 (same as section 6), and there stated:

"The damages referred to in section 5973, subject to interest in the discre-

tion of the jury, refer to 'the damages certain, or capable of being made certain by calculation,' as provided for in section 5972, and the interest provided for in the two sections is held to have no application to damages for personal injuries, or punitive damages mentioned in section 5975.

"The general rule is stated in City of Chickasha v. Hollingsworth et al., 56 Okla. 341, 155 P. 859, as follows:

" 'Interest cannot be recovered upon unliquidated damages where it is necessary for a judgment or verdict to be had in order to ascertain the amount of same.' "

In City of Oklahoma City v. Hoke, 75 Okla. 211, 182 P. 692, we recognized the right of the jury to award interest on the amount of damages resulting from flooding caused by the erection of a dam. The following, quoted from note in 28 L.R.A. (N.S.) 1, 76, was recognized as the governing rule:

"The general rule seems to be that interest should be allowed in actions for damages to property caused by water, sewage, or by diversion of water. This is under the rule that the value of the property destroyed is susceptible of computation. Some cases hold that it is discretionary with the jury."

In Midland Valley Railroad Co. v. Price, supra, we recognized the right to recover interest on the value of steers killed, as indicated in the syllabus, quoted above. It was said:

" . . . The original cases on the subject make a distinction between unliquidated claims, which may be determined by fixed standards, such as current wages for repairing damages to property, the value of materials to replace destroyed property, and the like; and unliquidated claims, which may not be determined entirely by fixed standards, but which must be left to the sound judgment and discretion of the jury, or the court in the absence of the jury. In the former case, interest is allowable, while in the latter it is not. The reason for the rule is that in the latter case the person against whom the claim is made cannot ascertain the amount chargeable against him until the same has been judicially determined."

It was held there that the expense of burying the steers was "fixed" and that the damage sustained by the loss of the steers "determinable by a fixed standard" that is ascertainable on the basis of value. In defendants' brief it is said:

"The trial court found that the fair market value of the Rosenbusch interest as of December 30, 1944, was $700.00, and plaintiffs in error have no quarrel with this figure."

This statement is recognition of an applicable market value and that the ascertainment of the value on that basis is correct. Such being true the case comes within the doctrine of the Hoke and Price cases, quoted above, and therefore there was no error in the allowance of interest.

Judgment affirmed.

DAVISON, C.J., and LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur.