24 F.3d 1190
 THRIFTY RENT-A-CAR SYSTEMS, INC., Plaintiff-Appellee,
v.
BROWN FLIGHT RENTAL ONE CORPORATION, and Richard Brown, an
individual, Defendants-Appellants,
v.
PENTASTAR SERVICES, INC., Thomas Bonner, Scott Anderson,
Fred Chesbro, Todd Hamilton, Third-Party Defendants.
 No. 93-5078.
 United States Court of Appeals,
Tenth Circuit.
 May 11, 1994.
 
 Russell A. Cook (Drew Neville with him on the briefs), Linn & Helms, Oklahoma City, OK, for appellants.
 James L. Kincaid (W. Kyle Tresch with him on the briefs), Crowe & Dunlevy, Tulsa, OK, for appellee and third-party defendants.
 Before KELLY, Circuit Judge, BARRETT, Senior Circuit Judge, and THEIS*, Senior District Judge.
 BARRETT, Senior Circuit Judge.
 
 
 1
 In this diversity case, Brown Flight Rental One Corp. (Brown Flight) and Richard Brown (Brown), hereinafter collectively referred to as appellants, appeal from summary judgment in favor of Thrifty Rent-A-Car Systems, Inc. (Thrifty) dismissing appellants' counterclaims and affirmative defenses and a judgment in favor of Thrifty in accordance with a jury verdict. A summary of the relevant uncontested facts follows.
 
 
 2
 Thrifty is a wholly owned subsidiary of Pentastar Transportation Group, which in turn is wholly owned by Chrysler Corporation. Thrifty is in the business of selling vehicle rental franchises, which it effectuates through license agreements. Thrifty's support services include, but are not limited to, leasing vehicles to its licensees, featuring Chrysler vehicles.
 
 
 3
 Prior to September, 1990, Brown and members of his family had operated an independent car rental business in New York City. In December, 1990, Brown Flight, a company formed by the Brown family, entered into a "Thrifty Rent-A-Car System, Inc. License Agreement for Vehicle Rental Leasing & Parking" (License Agreement) under which Brown Flight became a Thrifty licensee. Sections 10.3 and 10.4 of the agreement provided:
 
 
 4
 10.3 Entire Agreement. This License Agreement (including all Addenda and Exhibits hereto) constitutes the entire agreement of the parties, into which all prior negotiations, commitments, and undertakings with respect to the subject matter hereof are merged.
 
 
 5
 10.4 Representations. This License Agreement is not based upon any representations as to profits, nor has any other representation not herein expressly set forth been made to induce LICENSEE to accept and execute this License Agreement or, to the extent such representation has been made, LICENSEE hereby warrants and represents that LICENSEE has not relied thereon for any purpose and LICENSEE hereby waives and releases any claim it may have against THRIFTY or against any other Person with respect to such representation....
 
 
 6
 (Appellants' Appendix, Vol. 1 at 90).
 
 
 7
 Section 10.9 of the agreement provided that the agreement "shall, except where otherwise expressly provided herein, be governed and construed under and in accordance with the laws of the State of Oklahoma." Id. at 91. The purchase price for the franchise was $400,000.00. Brown Flight paid $250,000.00 down. Thrifty carried the balance of $150,000.00, secured by a promissory note and security agreement.
 
 
 8
 Brown Flight also entered into three "Master Lease Agreement[s]" (Lease Agreements) with Thrifty under which Brown Flight could lease cars from Thrifty for use in its car rental business. Under the Lease Agreements, Thrifty was not responsible to appellants for any loss of business or other damage caused by the interruption of the supply of goods or services on the part of Thrifty or for any other losses or damages sustained by appellants except as specifically provided. (See e.g., Appellants' Appendix, Vol. 1 at 116). The Lease Agreements further provided that they would be "interpreted under and governed by the laws of the State of Oklahoma." Id. at 119.
 
 
 9
 Although Brown signed the License Agreement and Lease Agreements as president of Brown Flight without reading them, (Appellees' Appendix at 85-7), he signed them only after his attorney had reviewed them. Id. at 87.
 
 
 10
 Pursuant to the Lease Agreements, Brown Flight ordered over 500 Chrysler vehicles from Thrifty for delivery in March and July, 1991. Thrifty approved the orders and forwarded them to Chrysler. Thrifty subsequently notified appellants that Chrysler had cancelled a large percentage of the order.
 
 
 11
 By the latter part of 1991, Brown Flight was in default under the agreements. Thrifty terminated the License Agreement and Lease Agreements and initiated this action, alleging that appellants had: breached the Lease Agreements by failing to pay amounts due; breached the License Agreement by failing to report or pay administrative and advertising fees due; and breached the promissory note by failing to make timely monthly payments. Thrifty also alleged that appellants had unlawfully converted Thrifty vehicles.
 
 
 12
 In their answer, appellants denied liability and alleged, inter alia, that Thrifty's claims were barred because Thrifty had engaged in fraud through concealment and misrepresentation and had breached the very contracts sued upon. Appellants also asserted three counterclaims based on common law fraud, statutory fraud under New York's Franchise Act, and breach of contract. "These [three counterclaims] related to two areas of concern, the furnishing of an adequate supply of rental vehicles by Thrifty and the projected profitability of Defendants' new franchise." (Appellants' Appendix, Vol. 4, Order, at 657-58). Thrifty filed a motion for summary judgment on appellants' counterclaims.
 
 
 13
 In its order granting summary judgment in favor of Thrifty on appellants' counterclaims, the district court found that appellants' common law and statutory law fraud counterclaims were barred by Sections 10.3 and 10.4 in the License Agreement and that appellants' breach of contract counterclaim based upon Thrifty's acceptance of orders of rental vehicles and failure to deliver them was barred by the Lease Agreements under which it was agreed that Thrifty would not be responsible or liable to its licensee for any failure to provide vehicles or any loss due to the interruption of the supply of vehicles.[1] In an order filed a week later, the court "reaffirm[ed] its earlier conclusion herein that the summary judgment granted Thrifty precludes any and all of the counterclaim issues, i.e., common law fraud, statutory fraud and breach of contract, as these issues apply to counterclaims, affirmative defenses and/or rescission claims. On the other hand, any affirmative defense and/or rescission claim not based upon common law fraud, statutory fraud and breach of contract ... would remain extant if properly pled and preserved throughout." (Appellants' Appendix, Vol. 4 at 658-59).
 
 
 14
 The case proceeded to trial on Thrifty's breach of contract and conversion claims. Appellants defended on the basis that Thrifty's conduct prevented them from performing. Appellants denied Thrifty's claim of conversion. During the trial, the district court ruled that the agreements were not ambiguous. (Appellees' Appendix at 83).
 
 
 15
 The court's instructions to the jury included:
 
 
 16
 This court has determined in a previously issued order that Thrifty will not be responsible or liable to Brown Flight for its inability to provide vehicles or for any loss due to the interruption of the supply of goods (vehicles) or for any delay in providing vehicles. This determination was based upon language in the vehicle Lease Agreements signed by Brown Flight (as Lessee) and Thrifty which states that "Thrifty shall not be responsible to LESSEE ... for any loss of business or other damage caused by an interruption of the supply of goods or services to be furnished hereunder by Thrifty, ... nor for any other losses or damages sustained by LESSEE hereunder."
 
 
 17
 In order for you to find that the Browns' performance under the contract with Thrifty is excused, you must find that a total breach occurred. A total breach is one which is so material and important the Browns would be justified in treating the transaction at an end. Additionally, you must find that the Browns promptly notified Thrifty of their intent to treat the transaction as ended. If you do not find that a total breach occurred and that the Browns, with full knowledge of pertinent facts, failed to promptly notify Thrifty of their intent to treat the transaction as ended, then you are instructed that the Browns' performance under the contracts with Thrifty is not excused.
 
 Contract Terms Cannot Be Orally Modified
 
 18
 Under the law and under the contracts in this case, the terms and conditions of the License Agreement, the Master Lease Agreements, the Promissory Note and the individual guarantees are binding on the parties as written. The parties agree the written instruments have not been altered, modified or varied either orally or in writing.
 
 
 19
 (Appellants' Appendix, Vol. 4 at 872-73).
 
 
 20
 In accord with the jury verdict, the court entered a judgment of $1,956,344.54, plus prejudgment interest at the annual rate of 6%, in favor of Thrifty and against appellants on Thrifty's breach of contract claims, and $391,410.95, plus post-judgment interest at the annual rate of 3.21%, in favor of Thrifty and against Brown Flight on Thrifty's conversion claims. Thereafter, the court entered a Stipulated Order and Judgment awarding Thrifty costs and attorney fees as the prevailing party in the total amount of $400,000.00.
 
 
 21
 On appeal, appellants contend that: (1) the district court's pretrial adjudication of their counterclaims and defenses was reversible error; (2) exclusion of relevant evidence was reversible error; (3) the district court's failure to properly instruct the jury was reversible error; and (4), the district court's addition of pre-judgment and post-judgment interest to the breach of contract award was erroneous. Because of its dispositive nature, our discussion will be limited to appellants' first contention only.
 
 I.
 
 22
 Appellants contend that the district court's pretrial adjudication of their counterclaims and defenses by granting Thrifty's motion for summary judgment was reversible error.
 
 
 23
 Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We review the district court's grant of summary judgment de novo, applying the same standards as the district court. O'Driscoll v. Hercules, Inc., 12 F.3d 176, 178-79 (10th Cir.1994). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. National Union Fire Insurance v. Emhart Corporation, 11 F.3d 1524, 1528 (10th Cir.1993). "If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case." Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted).
 
 
 24
 In their answer, appellants asserted three counterclaims based on common law fraud, statutory fraud, and breach of contract. The counterclaims were predicated on allegations of concealment of material facts and misrepresentations made by Thrifty during pre-contract communications between appellants and Thrifty. Among the counterclaims, appellants alleged that Thrifty represented it would "provide as many cars as [appellants] might need to operate a successful franchise in the Brooklyn and Manhattan territory...." (Appellants' Appendix, Vol. 1 at 26-27).
 
 
 25
 In granting Thrifty's motion for summary judgment on appellants' counterclaims, the district court found that: appellants were not "at liberty to rely upon Thrifty's alleged misrepresentation[s] in view of the integration and disclaimer clause in the License Agreement," (Appellants' Appendix, Vol. 4 at 651); the integration-disclaimer clause and clauses in the License Agreement "equally bar the common law and/or statutory fraud claims herein under the facts presented even assuming, arguendo, that the New York franchise law applied herein ...," id. at 652-53; and, Thrifty had no exposure to appellants on their breach of contract counterclaim for "accepting orders for rental vehicles and then failing to deliver them" since the Lease Agreements provided, e.g., that "THRIFTY shall not be responsible to LESSEE ... for any loss of business or other damage caused by an interruption of the supply of goods [vehicles] or services to be furnished hereunder by THRIFTY, ... nor for any other losses or damages sustained by LESSEE hereunder, except as specifically provided in THRIFTY'S undertaking in this Agreement...." Id. at 653-54.
 
 
 26
 a.
 
 
 27
 Appellants argue that the district court erred in granting Thrifty summary judgment on their common law fraud counterclaim based on its ruling that the claim was barred by the License Agreement's integration-disclaimer and entire agreement clauses.
 
 
 28
 Appellants contend that they established triable common law fraud claims under Oklahoma law based both on their allegations of Thrifty's misrepresentations that it would timely deliver a sufficient supply of Chrysler vehicles and on Thrifty's concealment of Chrysler's cancellations and delivery delays during 1990 with the resulting devastating impact on Thrifty licensees. Appellants argue that one of the "real issue[s] is whether Thrifty should have told the Browns about [the] prior cancellations so that the Browns would [have been] fully informed when they signed the agreements, paid the franchise fee and assumed the investment risks," and that "[h]ad this information been imparted, the Browns may have declined the investment opportunity altogether, or demanded contractual protection." (Appellants' Reply Brief at 9).
 
 
 29
 In Oklahoma, parol evidence of oral negotiations either preceding or contemporaneous with the execution of a written instrument is ordinarily not admissible to vary the terms thereof. Oklahoma Company v. O'Neil, 440 P.2d 978, 986 (Okla.1968). However, when it is alleged that false and fraudulent representations were made to induce execution of the contract, but for which representations the obligations would not have arisen, parol evidence in support of such allegations is admissible to prove fraud and to vitiate the contract, id. at 979-80; Storck v. Cities Service Gas Co., 575 P.2d 1364 (Okla.1977) (where fraud is alleged, testimony about circumstances leading up to the signing of the instrument and extrinsic facts showing the interpretation the parties put on the writings are all admissible); Bobo v. Bigbee, 548 P.2d 224 (Okla.1976); Bredouw v. Jones, 431 P.2d 413 (Okla.1966).
 
 
 30
 "The theory is that there was in fact an oral agreement which, through error or fraud, was not accurately reduced to writing.... [and] the parol evidence rule is inapplicable since the oral testimony is offered not to modify the written contract but to show that it is not the agreement of the parties." Webster v. Woods, 586 P.2d 337, 338 (Okla.App.1978). See also Mercury Investment Company v. F.W. Woolworth Co., 706 P.2d 523 (Okla.1985) (testimonial evidence may be admissible to contradict terms of written contract when fraud, accident, or mistake is relied upon for relief from binding effect of contract).
 
 
 31
 Under the law of Oklahoma, "[o]ne who is fraudulently induced to execute a written contract by the oral misrepresentation of the opposite party may always show that fact in evidence when he bases his defense on fraud in inducing the making of the contract," and "he may do this even though the contract sued on provides that all the agreements or representations between the parties are contained therein." Bowersock v. Barker, 186 Okla. 48, 96 P.2d 18, 19 (1939). See also Blanchard v. Blanchard, 108 Nev. 908, 839 P.2d 1320, 1322-23 (1992) (neither integration nor waiver clauses bar claims for misrepresentation).
 
 
 32
 Fraud is a question of fact to be determined by the trier of fact. Silk v. Phillips Petroleum Company, 760 P.2d 174 (Okla.1988). Fraud may be established by showing: (1) a material misrepresentation; (2) known to be false at the time made; (3) made with specific intent that a party would rely on it; and (4) reliance and resulting damage. Pytlik v. Professional Resources, Ltd., 887 F.2d 1371, 1378 (10th Cir.1989) citing D & H Co., Inc. v. Shultz, 579 P.2d 821 (Okla.1978). Fraud may also be established by showing the concealment of material facts which one is bound under the circumstances to disclose. Varn v. Maloney, 516 P.2d 1328, 1332 (Okla.1973). In Deardorf v. Rosenbusch, 201 Okla. 420, 206 P.2d 996, 998 (1949), the court held:
 
 
 33
 A duty to speak may arise from partial disclosure, the speaker being under a duty to say nothing or to tell the whole truth. One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it goes, since such concealment is in effect a false representation that what is disclosed is the whole truth.
 
 
 34
 "In determining whether there is a duty to speak, consideration must be given to the situation of the parties and matters with which they are dealing." Silk, 760 P.2d at 179. "If on account of peculiar circumstances there is a positive duty on the part of one of the parties to a contract to speak, and he remains silent to his benefit and to the detriment of the other party, the failure to speak constitutes fraud." Id.
 
 
 35
 In order to protect against a fraud in the inducement allegation from swallowing up the time-honored rule that the plain, unambiguous terms of a written contract are binding on the parties, Oklahoma requires that the fraud must be established by clear and convincing evidence. Funnell v. Jones, 737 P.2d 105, 108 (Okla.1987), cert. denied, 484 U.S. 853, 108 S.Ct. 158, 98 L.Ed.2d 113 (1985) ("It is a settled rule in Oklahoma that fraud is never presumed and where a written agreement is attacked on the ground of fraud, that agreement will be upheld unless the allegations of fraud are established by clear and convincing evidence"); Webster, 586 P.2d at 338 ("Thus the burden of proof required to show that a written contract should be reformed is a heavier burden than usual in civil litigation").
 
 
 36
 Applying the law of Oklahoma to our case, we hold that the district court erred in granting summary judgment on the basis that the integration-disclaimer clause and the entire agreement clause barred appellants' common law fraud counterclaim. We reverse the district court's order granting summary judgment to Thrifty on appellants' common law fraud counterclaim and remand for further proceedings consistent with this opinion.
 
 
 37
 Upon remand, we suggest that the court utilize the en camera hearing procedure recommended in Universal Drilling Company v. Camay Drilling Company, 737 F.2d 869 (10th Cir.1984), to determine if evidence of each element of the alleged fraud is present. In that case, we identified the elements of a prima facie case of fraud under Colorado law and suggested that the trial court:
 
 
 38
 ... "hold a preliminary hearing away from the jury to determine whether the party offering the evidence is really seeking to show fraudulent misrepresentation or fraudulent nondisclosure." ...
 
 
 39
 Plaintiffs made a lengthy offer of proof concerning the representations they allege occurred which amounted to fraud.... The trial court found plaintiffs' offer of proof insufficient to submit the question of fraud in the inducement to the jury. The extrinsic evidence was accordingly excluded.
 
 
 40
 Id. at 871-72. See also Silk, 760 P.2d at 177 ("The mere fact that fraud is claimed will not justify the submission of that issue unless facts are produced from which an irresistible deduction of fraud reasonably arises."); Silver v. Slusher, 770 P.2d 878, 881 n. 8 (Okla.1988), quoting Sokolosky v. Tulsa Orthopaedic, Etc., 566 P.2d 429, 431 (Okla.1977) ("An action for fraud may not be predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence."); P.E.A.C.E. Corporation v. Oklahoma Natural Gas Company, 568 P.2d 1273, 1277 (Okla.1977) ("... [T]here must be evidence of each element of fraud presented before the issue may be submitted to the jury").
 
 
 41
 b.
 
 
 42
 Appellants contend that the district court erred in granting summary judgment in favor of Thrifty on appellants' second counterclaim, wherein they alleged that Thrifty's actions violated the New York Franchise Act, Art. 33 of the New York General Business law Sec. 687(2), (4), and (5).
 
 
 43
 In granting summary judgment, the district court found that "[t]his section of the New York Franchise Act codifies common law fraud. However the court concludes Secs. 10.4 and 10.3 [integration-disclaimer clause and entire agreement clause] equally bar the common law and/or statutory fraud claims herein under the facts presented, even assuming, arguendo, that the New York franchise law applied herein because Brown Flight operated in such state." (Appellants' Appendix, Vol. 4 at 652-53).
 
 
 44
 We reverse the district court's finding that the integration-disclaimer clause and the entire agreement clause "equally bar the common law and/or statutory fraud claims herein...." However, we do not decide whether the New York Franchise Act is applicable. That determination must be made initially by the district court if this counterclaim is presented on remand.
 
 
 45
 c.
 
 
 46
 Appellants contend that the district court erred in granting summary judgment to Thrifty on their breach of contract counterclaim.
 
 
 47
 In their third counterclaim, appellants alleged that Thrifty had breached the Lease Agreements by accepting orders for rental cars and failing to deliver them. Each of the Lease Agreements contained a damage disclaimer clause which essentially provided that Thrifty would not be responsible to Brown Flight for any loss of business or other damage caused by an interruption of the supply of vehicles to be furnished by Thrifty, nor for any other losses or damages sustained by Brown Flight under the agreement, except as specifically provided in the agreement. (Appellants' Appendix, Vol. 4 at 654). The district court relied on these provisions in granting summary judgment on appellants' breach of contract counterclaim, concluding that "Thrifty has no exposure for failure to deliver vehicles...." Id.
 
 
 48
 Appellants contend that the district court's reliance on the clauses in granting summary judgment in favor of Thrifty on their breach of contract counterclaim was self-defeating, in violation of public policy, and void under Oklahoma's version of the Uniform Commercial Code. Appellants further contend that the disclaimers would render the Lease Agreement illusory if "interpreted to exempt Thrifty from all liability for non-performance of contractual obligations...." (Appellants' Brief in Chief at 38). On remand, the district court must look beyond the contract provisions and address these issues if this counterclaim is presented.
 
 
 49
 d.
 
 
 50
 Appellants contend that the district court erred when it entered a second Order on Thrifty's motion for summary judgment on appellants' counterclaims and "sua sponte, decided that its reasons for rejecting the Browns' counterclaims also compelled rejection of most of their affirmative defenses...." (Appellants' Brief in Chief at 40).
 
 
 51
 We do not decide the validity of appellants' affirmative defenses. That determination must be made initially by the district court if the issue is presented on remand.
 
 II.
 
 52
 We REVERSE the district court's judgment on the jury verdict, the Stipulated Order and Judgment awarding Thrifty costs and attorney fees, and the Order granting summary judgment in favor of Thrifty on appellants' counterclaims and affirmative defenses. We REMAND for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Frank G. Theis, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 Paragraph 10 of the December 6, 1990, Lease Agreement provides:
 THRIFTY shall not be responsible to LESSEE ... for any loss of business or other damage caused by an interruption of the supply of goods or services to be furnished hereunder by THRIFTY, ... nor for any other losses or damages sustained by LESSEE hereunder, except as specifically provided in THRIFTY'S undertaking in this Agreement ...
 Paragraph 12.A of the July 12, 1991, and October 18, 1991, Lease Agreements provides:
 COMPANY shall not be responsible to LESSEE ... for any loss of business or other damage caused by COMPANY'S failure to provide a vehicle specified by LESSEE on an Order Form ordered by LESSEE or by the interruption of the supply of vehicles ... to be furnished hereunder by COMPANY ..., except as specifically provided by this Agreement or the Lease Program.